ELECTRO-TINT ENGRAVING CO. v. AMERICAN HANDKERCHIEF CO.

(Supreme Court, Appellate Division, First Department.   February 19, 1909.)

1. SALES (§ 261*)—WARRANTY—WORDS OF DESCRIPTION.

Mere words of description, in an executory contract for the sale of pictures, to the effect that the work would be first-class in every particular and up to the proofs submitted, did not amount to a warranty, for breach of which the buyer could recover, after acceptance of the goods containing defects.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 730;  Dec. Dig. § 261.*]

2. EVIDENCE (§ 35*)—JUDICIAL NOTICE—FOREIGN LAW.

The courts cannot take judicial notice of the laws of a foreign state, which, if relied on, must be both pleaded and proved.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 51;  Dec. Dig. § 35.*]

3. PLEADING (§ 349*)—JUDGMENT ON PLEADINGS—ADMISSION BY PLEADINGS—PART OF DEMAND.

Code Civ. Proc. § 511, declares that, where the answer admits a part of plaintiff's claim, the court, on plaintiff's motion, may order the action to be severed, and may give plaintiff judgment for the amount admitted, with the right at plaintiff's election to continue the action for the remainder of the claim;  and section 547 (Laws 1908, p. 462, c. 166), declares that, if either party is entitled to judgment on the pleadings, the court at any time, without issue joined, may give judgment accordingly.  *Held* that, where no defense was set up in an action for breach of a contract for the purchase of certain pictures which would relieve defendant from liability for the pictures which had been delivered, plaintiff was entitled to a severance of the cause of action and a judgment on the pleadings for the amount due for such pictures, with a continuance of the action as to the balance.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 1068;  Dec. Dig. § 349.*]

Appeal from Special Term, New York County.

Action by the Electro-Tint Engraving Company against the American Handkerchief Company.  From an order of the Special Term, denying a motion to sever and for judgment, plaintiff appeals.  Reversed, and motion granted.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Goodale & Hanson (E. C. Crowley, of counsel), for appellant.
Thomas Conyngton, for respondent.

CLARKE, J.  Plaintiff moved at Special Term, Part 1, for an order granting judgment for the sum of $4,078.89, with interest from December 1, 1907, and also for the sum of $2,851.16, with interest from January 1, 1908, admitted by the answer to be due to the plaintiff, and directing that the action be severed, and that it be continued as to the remainder of the claim set up in the complaint, with a like effect as to all subsequent proceedings as if it had been originally brought for the remainder of the claim.  The motion was denied, and from the order entered thereon this appeal is taken.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The complaint alleges that on or about the 25th day of July, 1907, the plaintiff and defendant, at Philadelphia, entered into a contract whereby the plaintiff agreed to furnish the defendant 3,000,000 three-colored process pictures, and the defendant agreed to pay the plaintiff for the same according to the conditions set forth in exhibits annexed to the complaint and made a part thereof. In the first of these letters defendant wrote:

"Kindly accept our order for 3,000,000 three-colored process pictures under the following conditions: * * * That the 3,000,000 pictures will be divided equally into nine subjects. * * * Proofs are to be furnished us for our approval before the actual work of printing is begun. That the delivery shall be as follows: Two million to be delivered during September, October, November, and December, 1907, at a rate of 500,000 each month, and at a rate of not less than 100,000 per week. That the remaining 1,000,000 pictures are to be ordered out by January 31, 1908. That, if we see fit, the delivery of the pictures can be changed, and the entire 3,000,000 ordered out by December 31, 1907, instead of January 31, 1908. * * * That the price of the first 500,000 pictures is to be $6.10 per M., and the price for the remaining 2,500,000 pictures is to be $5.50, both prices f. o. b. Philadelphia. That the work is to be first-class in every particular and to be up to proofs approved by us."

To which the plaintiff answered:

"It gives us great pleasure to acknowledge your valued favor of the 24th inst., containing order for 3,000,000 pictures. The conditions named therein are entirely satisfactory to us, except that you mention trichromatic paper. We do not intend to use trichromatic paper, except on the first edition of 500,000. We have arranged for a paper that will be, if anything, superior to the trichromatic. * * * We know that this will be entirely satisfactory to you, as you are only interested in the finished product, which we will uniformly maintain. * * * Thanking you for the order," etc.

Plaintiff wrote another letter the same day:

"We haven't mentioned the question of terms on the order for the 3,000,000 pictures, but wish to say that our idea of payment would be that you send us a check each month on receipt of each month's lot of pictures, the entire order to be paid on or before January 31, 1908."

To which the defendant answered:

"We have your letter . * * * accepting our order for 3,000,000 pictures. We note your exception in reference to trichromatic paper, and would state that as long as the paper used is equally as good as trichromatic it will be satisfactory. * * * In reference to the terms stated in your letter, we understand them as follows: That whereas there will be three or four shipments each month of pictures, that the total number of pictures received during that month are to be paid for before the end of each month; that is, that pictures received each month are to be paid for before the expiration of said month. The terms as above stated are perfectly satisfactory to us."

The complaint proceeds to state that the plaintiff in all respects duly performed all the conditions of said contract on plaintiff's part until the 9th day of January, 1908, when the defendant refused to pay the plaintiff installments then due for deliveries of pictures received by defendant in November and December, and further abandoned said contracts, and refused to perform the same, and prevented the plaintiff from continuing to perform the same thereafter.

"Fifth. That on said 9th day of January, 1908, the defendant had received from the plaintiff in November, 1907, 874,930 pictures, which the plaintiff had delivered under said contract, and the sum of $4,812.10 became due therefor

from the defendant to the plaintiff on the 1st day of December, 1907, which sum has not been paid, except $733.21 thereof. That on said 9th day of January, 1908, the defendant had received from the plaintiff in December, 1907, 518,400 pictures, which the plaintiff had delivered under said contract, and the sum of $2,851.16 became due therefor from the defendant to the plaintiff on the 1st day of January, 1908, which sum has not been paid, nor any part thereof."

It is for these two sums so alleged to be due that the plaintiff asked judgment for on this motion. The complaint further alleged that it had expended, in preparing to furnish 728,000 pictures in January, $2,779, and that by the refusal of the defendant to complete on its part, and its abandonment, plaintiff has lost the profit on said number of pictures, amounting to $1,225. Those matters are not before the court.

The answer admits the allegations contained in the first, second, and third paragraphs of the complaint, which are the allegations of the corporate capacity of the two parties and of the making of the contract and the terms thereof, and so much of paragraph numbered "Fifth" as contained in the words, "that on said 9th day of January, 1908, the defendant had received from plaintiff in November, 1907, 874,930 pictures," and "that on said 9th day of January, 1908, the defendant had received from plaintiff in December, 1907, 518,400 pictures," and the allegations of paragraph numbered "Eighth" contained in the words, "But the defendant has refused, and still refuses, to pay for the same." It denied all the allegations contained in the fourth paragraph of the complaint, which were that the plaintiff had in all respects duly performed all the conditions of the contract until the 9th day of January, when the defendant refused to pay, and abandoned said contract, and refused to permit plaintiff to perform, and prevented plaintiff from performing. It denied all the allegations in the fifth paragraph, other than its admission of the receipt of the pictures, and it denied each and every allegation in said complaint contained which is not herein specifically admitted. For a further separate and distinct defense, it alleges that it has always been ready and willing to carry out the contract, but that plaintiff on its part has failed to carry out its contract, and to deliver pictures of the kind, quality, and condition specified in said contract, although frequently requested by the defendant so to do; that it notified the plaintiff of its readiness to abide by and go on with said contract, as is evidenced by the letter of January 1, 1908, a copy of which was attached. That letter is as follows:

"We have fully decided that we cannot use the pictures we have on hand shipped by you during the month of December, and consequently hold same subject to your order. On the pictures shipped by you during November, the greater part of which we used, we will expect a satisfactory settlement. The November pictures we used, because we were practically compelled to do so on account of other outlays and expenditures of goods we had incurred to be used in connection with the pictures, and which, if we had not used the pictures, would have been entire loss, because of their special nature. We complained of these November pictures at least one dozen times to your representative, and were assured after each shipment that the next would be better, and your representative told us to go ahead and use them, and that he would see us through in the matter. Practically all of the pictures shipped during November were inferior. A large number were very bad, and we lost a large

amount of money through the inability of our agents to dispose of them. The pictures that you shipped during December, while some are better than others, still we bought these pictures in sets of nine, and we cannot use them excepts in sets. When we placed the order for these pictures, we explained at great length the importance of maintaining the quality of the pictures throughout, and we were assured by you that the pictures would, if anything, get better as you went along; you explaining then that after you got them going on the presses the quality would improve. * * * We will send you a check for the November account when satisfactory settlement has been made on them."

### And the answer proceeds:

"And at various other times, personally to the agent of said plaintiff, in the city of New York; but said plaintiff delivered none of the 728,000 pictures that were to have been furnished this defendant in January, and has never delivered the same, or any part thereof.

"Ninth. Defendant admits that it has received and used the pictures furnished by the plaintiff under the agreement during the month of November, but defendant alleges that on the receipt of said pictures it promptly notified the plaintiff and its agent that said pictures so furnished were not in accordance with the terms of the agreement. Thereupon plaintiff, through its agent, instructed the defendant to use said pictures, and thereupon agreed with the defendant to make good any loss that defendant should sustain by reason of the fact that said pictures were not in accordance with said contract, which loss the plaintiff has refused and failed to make good to this defendant up to the present time.

"Tenth. Defendant admits that it has received the pictures furnished by plaintiff in December; but defendant alleges that, immediately upon receipt and examination thereof, it promptly notified the plaintiff and its agent that said pictures were not in accordance with the terms of the agreement and were held by defendant subject to the plaintiff's order. Plaintiff thereupon offered, if defendant would pay in full for the November shipment of pictures, to take back all of said December pictures and cancel the agreement. Defendant declined this offer, and later, upon receiving many inquiries for pictures, it used a portion of the December pictures, sending same to defendant's agents, and the remainder, amounting to approximately one-half of the defendant's shipment, are still held by defendant subject to plaintiff's order."

### Wherefore it asked for a dismissal of the complaint.

It will be noted that no counterclaim is set up, that no amount of damage by way of offset is alleged, and that the matters set forth are not expressly stated to be a partial defense, as required by section 508 of the Code of Civil Procedure, and, further, that the receipt and use of the entire November shipment is admitted, and that the receipt of the entire December shipment and the use of approximately one-half thereof is admitted. It is not to be questioned, and in fact the respondent does not question, but states in its brief:

"If this were a contract made in the state of New York, the defendant, as set forth in the carefully prepared opinion in Staiger v. Soht, 116 App. Div. 874, 102 N. Y. Supp. 342, affirmed 191 N. Y. 527, 84 N. E. 1120, and other New York decisions cited by plaintiff, * * * would have been compelled either to reject the pictures absolutely, or pay the agreed price for them, as in such cases the New York decisions do not recognize any warranty that would survive acceptance and use."

### In the Staiger Case Mr. Justice Miller said:

"I deduce from the foregoing that the following propositions are authoritatively settled in this state, viz.: That mere words of description in an executory contract of sale do not amount to a warranty, and that for a variance between the article delivered and the article described the remedy is for breach of the contract of sale, and does not survive acceptance of the goods

where the defects are patent; likewise that warranties which the law implies as exceptions to the rule caveat emptor do not survive acceptance where the defects are patent, but that in the case of express warranties, whether the sale be executed or executory, retention of the goods after opportunity for inspection, or even after knowledge of the defects, does not bar an action for breach of warranty."

But the defendant claims that, it appearing upon the papers that this was a Pennsylvania contract, because the contract is admitted to have been made at Philadelphia and the goods were to be delivered f. o. b. at Philadelphia, so that both the place of making of the contract and of the execution thereof was in said state, the law of Pennsylvania is to be applied; and it claims that under the law of that state the defendant could, at its option, either reject the goods on delivery or accept and use them, and in case of acceptance and use would only be liable for their actual value, not for the contract price. But the law of Pennsylvania is not set up or alluded to in the answer. It has been generally understood that, where a party either seeks to recover or defend under a foreign law, such law must be pleaded and proved like any other fact, since the court cannot take judicial notice of the laws of a foreign state. In Hanley v. Donoghue, 116 U. S. 1, 6 Sup. Ct. 242, 29 L. Ed. 535, Mr. Justice Gray said:

"No court is to be charged with the knowledge of foreign laws; but they are well understood to be facts which must, like other facts, be proved before they can be received in a court of justice. Talbot v. Seeman, 1 Cranch, 1, 2 L. Ed. 15; Church v. Hubbart, 2 Cranch. 187, 2 L. Ed. 249; Strother v. Lucas, 6 Pet. 763, 8 L. Ed. 573; Dainese v. Hale, 91 U. S. 13, 23 L. Ed. 190. It is equally well settled that the several states of the Union are to be considered as in this respect foreign to each other, and that the courts of one state are not presumed to know, and therefore not bound to take judicial notice of, the laws of another state."

As early as Monroe v. Douglass, 5 N. Y. 448, the Court of Appeals said:

"It is a well-settled rule, founded on reason and authority, that the lex fori, or, in other words, the laws of the country to whose courts a party appeals for redress, furnished in all cases. prima facie, the rule of decision; and if either party wish the benefit of a different rule of law, as, for instance, the lex domicilii, lex loci contractus, or lex loci rei sitæ, he must aver and prove it. The courts of a country are presumed to be acquainted only with their own laws. Those of other countries are to be averred and proved, like other facts of which courts do not take judicial notice; and the mode of proving them, whether written or unwritten, has been long established."

Of the rule so laid down this court in Latham v. De Loiselle, 3 App. Div. 525, 38 N. Y. Supp. 270, said:

"Two propositions are included in this rule proclaimed in the case cited, viz.: That, when the suitor is properly in court upon his contract, a remedy will be afforded according to the law of the state of New York, and the contract stipulations enforced, unless a different rule governing the contract is made to appear; and that, to make it appear, it must be set up by the party claiming advantage under it."

In Fidelity & Casualty Co. v. Wells, 49 App. Div. 171, 62 N. Y. Supp. 1066, this court said:

"If, as is claimed by the defendant, the law of Pennsylvania differs in that regard from ours, no presumption to that effect exists; but that law must be alleged as a fact, and until it is so alleged and proven, we must assume that

this contract, wherever made, is to be construed under the rules of the common law as applied in the state of New York. Monroe v. Douglass, 5 N. Y. 447."

In Stuart v. New York Herald Co., 73 App. Div. 459, 77 N. Y. Supp. 216, this court, in reversing a judgment in favor of the plaintiff in an action for libel, said:

"There was error committed by the court in allowing, over the objection of the defendant, proof of a New Jersey statute making adultery a crime. That statute was not pleaded. Adultery is not a crime at common law, nor in the state of New York. Being a crime in the state of New Jersey, that should have been pleaded."

In Union National Bank v. Chapman, 169 N. Y. 538, 62 N. E. 672, 57 L. R. A. 513, 88 Am. St. Rep. 614, the rules were formulated as to the law applicable to the interpretation and the enforcement of contracts, and the defendant was held not liable because by the law of the state of Alabama, where she made her contract, she had no capacity to make the contract in question. In that case, as will be seen on the appeal upon the first trial, reported in 7 App. Div. 452, 39 N. Y. Supp. 1051, the defendant set up three affirmative defenses, pleading the foreign law. It is apparent, therefore, that in the case at bar, even if the rule of law asserted obtains in Pennsylvania, it is not available in defense as it is not pleaded.

Section 511 of the Code of Civil Procedure provides that:

"Where the answer of the defendant expressly, or by not denying, admits a part of the plaintiff's claim to be just, the court, upon the plaintiff's motion, may, in its discretion, order that the action be severed; that a judgment be entered for the plaintiff for the part so admitted; and, if the plaintiff so elects, that the action be continued with like effect as to the subsequent proceedings as if it had been originally brought for the remainder of the claim."

Section 547 of the same Code (Laws 1908, p. 462, c. 166), provides:

"If either party is entitled to judgment upon the pleadings, the court may, upon motion, at any time after issue joined, give judgment accordingly."

As it appears that the contract is admitted, and that 874,930 pictures had been delivered to and used by the defendant in the month of November, 1907, and that $4,812.10 became due therefor, on the 1st of December, 1907, of which $733.21 had been paid, leaving a balance of $4,078.89 due, and that 518,400 pictures had been delivered in December, 1907, approximately one-half of which had been used, and for which $2,851.16 became due on the 1st of January, 1908, no part of which had been paid, and as no defense has been set up in the answer, the plaintiff was entitled to an order of severance and for judgment as prayed.

The order appealed from should therefore be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs to the appellant. All concur.