WILLIAM A. STOKES, Appellant, *v.* ELIZABETH W. STOKES, Respondent.

Husband and wife — action to annul a marriage upon ground that former marriage of one of the parties was in force at time of second marriage — inquiry must be made to discover whether husband or wife of former marriage was dead at time of second marriage.

When findings are so inconsistent that it is impossible to harmonize them, it is the duty of the court to accept those most favorable to the appellant, as he is entitled to rely upon them in aid of his exceptions, and it will not be presumed that they were inadvertently made.

Any one of three persons concerned may maintain an action to annul a marriage upon the ground that a former marriage of one of the parties thereto was in force at the time of the marriage sought to be annulled, viz., either of the parties to the later marriage and the party to the former marriage who was not a party to the later; such a marriage is either void or voidable.

If a woman, a party to the first marriage, knew or should have known at the time of her second marriage that her husband was living and undivorced, such second marriage is absolutely void. If she did not know that fact within the true meaning of the statute, and married the second time in full belief after due observance of the five-year provision of the statute that her first husband was dead, the marriage was not void but voidable, binding upon both parties thereto until action by the court.

Knowledge by the wife within the true meaning of the statute, as to whether an absent husband is alive when she contracts a second marriage, involves all that a person of ordinary prudence would have discovered under like circumstances by an inquiry conducted in good faith with the diligence required by the importance of the subject. The inquiry must be made with an honest effort to find out the truth, not to overlook it so as to be able to testify that nothing was discovered. A careless or dishonest inquiry affords no protection.

The effect of an admission by both husband and wife in an action to annul a marriage upon the ground that the wife had a husband living at the time of the marriage, that "the marriage was in good faith" considered in connection with evidence subsequently given tending to show lack of good faith. *Held,* the admission was apparently regarded as meaning good faith in fact but not in law, or in other words that the defendant supposed that she had the right to marry, even if she had not used due diligence to inquire whether her first husband was alive and did not mean good faith in the statutory sense. According to the findings most favorable to plaintiff the marriage in question was void. *Stokes* v. *Stokes,* 128 App. Div. 838, reversed.

(Argued March 25, 1910; decided April 26, 1910.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered December 4, 1908, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term.

Action to annul a marriage upon the ground that at the time the defendant was married to the plaintiff she had a husband by a former marriage who was still living and that such marriage was in full force. The judgment of the trial court dismissing the complaint on the merits was affirmed by the Appellate Division, one of the justices dissenting.

The facts, so far as material, are stated in the opinion.

*George W. Wingate* for appellant. The marriage of the defendant to the plaintiff was void unless she alleged and proved that she had used due diligence to ascertain if her first husband were living, or had no reason to believe that he was, in which case it was voidable. (*Gall* v. *Gall*, 114 N. Y. 109; *People* v. *Fleming*, 27 N. Y. 329; *People* v. *Meyer*, 8 N. Y. S. R. 259; *Wyler* v. *Gibbs*, 1 Rep. 884; *Alexiamiun* v. *Alexiamian*, 28 Misc. Rep. 338.) The findings that Hitchings, the defendant's husband, had a brother who was a lawyer in New York, who was constantly informed in regard to his whereabouts; that the defendant was well acquainted with that brother and had had business dealings with him in regard to the property which her husband had turned over to her and her children, and that the husband had been in communication with George Hitchings, one of the defendant's sons, and that at the time of the marriage defendant knew that her husband was alive, and that she could at such time and within five years previous thereto, have ascertained through sources known to her that her husband was alive, were controlling. (*Elterman* v. *Hyman*, 192 N. Y. 113; *City of Buffalo* v. *D., L. & W. R. R. Co.*, 190 N. Y. 98; *Israel* v. *M. R. Co.*, 158 N. Y. 631; *Whalen* v. *Stuart*, 194 N. Y. 495.) The facts proved did not sustain the conclusion of the court that the appellant was estopped from maintaining his action.

(*Terry* v. *Munger*, 121 N. Y. 161.) The conclusion of the courts below that the appellant was estopped from receiving a decree annulling his marriage was erroneous. (*O'Dea* v. *O'Dea*, 101 N. Y. 23; *Stein* v. *Dunne*, 119 App. Div. 8; *McCarron* v. *McCarron*, 26 Misc. Rep. 158; *Pettit* v. *Pettit*, 105 App. Div. 312; *Kerrison* v. *Kerrison*, 8 Abb. [N. C.] 444; *Taylor* v. *Taylor*, 63 App. Div. 234; 1 Bishop on Mar. & Div. § 618; 2 id. § 799; *Cramp* v. *Morgan*, 3 Ire. Eq. 91; *Horowitz* v. *Pealty*, L. R. [1 P. & M.] 335; *Powell* v. *Powell*, 18 Kans. 377.) The equitable rule of waiver or estoppel cannot be invoked to prevent one party to a marriage contracted with a woman who then had a living husband from asking to have that marriage dissolved, because he lived with her for two years after he had been told of the existence of such former husband. (*Taylor* v. *Van Loan*, 15 Wend. 310; 2 Pom. Eq. Juris. [3d ed.] § 802; *Di Lorenzo* v. *Di Lorenzo*, 174 N. Y. 467; *Pettit* v. *Pettit*, 105 App. Div. 312; *Appleton* v. *Warner*, 51 Barb. 270; *Finn* v. *Finn*, 62 How. Pr. 83; *Ponder* v. *Graham*, 4 Fla. 23.)

*James P. Niemann* for respondent. The marriage of the plaintiff and the defendant was not void, but voidable only. The first marriage is suspended, "placed in abeyance." The second marriage would become void only from the time its nullity was declared by a court of competent jurisdiction. (*Jones* v. *Zolter*, 32 Hun, 280; 29 Hun, 551; *White* v. *Lowe*, 1 Redf. 376; *Valleau* v. *Valleau*, 5 Paige, 207; *Cropsey* v. *McKiney*, 30 Barb. 47; Bishop on Mar. & Div. § 283; Gilbert on Dom. Rel. [2d ed.] 21; *Griffin* v. *Banks*, 24 How. Pr. 213; *Gall* v. *Gall*, 114 N. Y. 120.) The plaintiff is precluded from obtaining a decree in this action. His own testimony made it incumbent upon the court to dismiss his complaint. (*Valleau* v. *Valleau*, 6 Paige, 209; Bishop on Mar. & Div. § 283; *Gall* v. *Gall*, 114 N. Y. 120; *Kiernan* v. *D. C. M. Ins. Co.*, 150 N. Y. 194; *Gaylord* v. *Van Loan*, 15 Wend. 310; *O'Dea* v. *O'Dea*, 17 Wkly. Dig. 375; *Di Lorenzo* v. *Di Lorenzo*, 174 N. Y. 467; *Dennis* v. *Jones*, 44 N. J. Eq. 513;

*Barton* v. *Lang*, 45 N. J. Eq. 841; *Coles* v. *Vannemann*, 51 N. J. Eq. 323.) The findings made by the trial court established that the defendant contracted her marriage with the plaintiff in good faith. The ninth finding to the contrary, proposed by the plaintiff, was included by inadvertence in an omnibus note made at the foot of plaintiff's proposed findings, but in so far as it may be inconsistent with the formal findings made by the court, is nugatory and of no effect, because the plaintiff is estopped by force of his concession made upon the trial and which stands unrevoked upon the record now brought up for review, from claiming by force of said ninth finding that the marriage was not contracted in good faith. (*Health Department* v. *Purdon*, 99 N. Y. 237; *Green* v. *Boworth*, 113 N. Y. 462; *Bennett* v. *Bates*, 94 N. Y. 354; *Stemmler* v. *Mayor, etc.*, 179 N. Y. 473; *Terry* v. *Munger*, 121 N. Y. 161; *Carman* v. *Pultz*, 21 N. Y. 549; *Warner* v. *Warner*, 46 N. Y. 228; *State Building Co.* v. *Fatty*, 4 Trans. App. 311; *Stratton* v. *Cornfield*, 2 Keyes, 55.)

VANN, J. An action to annul a marriage is purely statutory and a brief reference to the statutes governing the subject is a proper foundation for a review of the questions presented by this appeal. Such an action may be brought upon the ground, among others not now material, "that the former husband or wife of one of the parties was living and that the marriage with the former husband or wife was then in force." (Code Civ. Pro. § 1743.) The action "may be maintained by either of the parties during the lifetime of the other, or by the former husband or wife." (Id. § 1745.) "Where it appears, and the judgment determines, that the subsequent marriage was contracted by at least one of the parties thereto in good faith, and with the full belief that the former husband or wife was dead, or without any knowledge on the part of the innocent party of such former marriage, the issue of the subsequent marriage" are deemed legitimate children of the innocent party and entitled to inherit the real and personal estate of such parent. (Id.)

Such marriages are either void or voidable. "A marriage is absolutely void if contracted by a person whose husband or wife by ·a former marriage is living, unless  *   *   * such former husband or wife has absented himself or herself for five successive years then last past without being known to such person to be living during that time," and in that event it is void only "from the time its nullity is declared by a court of competent jurisdiction." (Domestic Relations Law, §§ 3, 4; L. 1896, ch. 272, §§ 3, 4; 2 R. S. [6th ed.] 2332, § 6.)

Thus, any one of the three persons concerned may maintain the action; either of the parties to the later marriage and the party to the former marriage who was not a party to the later. If a woman marries when her husband by a former marriage is alive, both marriages cannot be in full force at that time. Assuming that there was no divorce, either the subsequent marriage is void or the former marriage is suspended or in abeyance, and, if so, it is "not reinstated by the return of the absentee," but is voidable and not void until so adjudged. "Otherwise both marriages would be in force at the same time and, to this extent, polygamy would be sanctioned by law." (*Gall* v. *Gall*, 114 N. Y. 109, 120.) The marriage between the parties to this action was either void or voidable, for the first husband of the defendant was living and undivorced when it was contracted. If she knew, or should have known the fact at that time, it was absolutely void with no binding force upon either party and their relations were not sanctioned by law, whether they realized it or not. If she did not then know it within the true meaning of the statute and she married the second time in the full belief, after due observance of the five years' provision, that her first husband was dead, the marriage was not void but voidable, binding upon both parties thereto until action by the court, and their relation was that of honorable marriage, with no stain on the good name of either and no blight on the status of any child they might have.

The theory of the complaint is that the marriage between

the parties was absolutely void, for it alleges that the former marriage was in force when the second marriage was contracted. This is the logical and proper form of pleading to attack the integrity of the second marriage and to procure an adjudication that it was void.

The answer denies any knowledge or information sufficient to form a belief that the former husband of the defendant was alive when she married the plaintiff and, upon information and belief, denies that the former marriage was then in force. It is alleged as a separate defense that five years had elapsed since the defendant last heard of her former husband and that she believed him to be dead after making due search and diligent inquiry before she married the plaintiff. Insisting that her second marriage was valid when contracted and that it is still valid, and with no plea that the plaintiff was not in an equitable position to maintain the action, she asked that the complaint be dismissed.

The court found, among the requests presented by the plaintiff, "that said John M. Hitchings, the first husband of the defendant, was alive at the time of the trial herein; that at the time of the marriage of defendant with plaintiff, defendant knew that her husband John M. Hitchings was alive; and that at the time of the marriage of defendant and plaintiff and within five years previous thereto, defendant ascertained through sources known to her that her husband John M. Hitchings was alive." The court further found the first conclusion of law as requested by the plaintiff, to wit: "That the marriage of defendant to John M. Hitchings was in full force and effect at the time of said defendant's marriage to plaintiff on the 18th day of January, 1905." He refused to find, as a final conclusion of law, that the marriage of the defendant to the plaintiff was void, and the plaintiff excepted.

In the findings prepared for the judgment roll and duly signed by the trial justice, he found, among other things, "that said John M. Hitchings deserted and abandoned the defendant and absented himself for more than five successive years thereafter before defendant contracted her marriage

with the plaintiff hereinafter mentioned without being known to the defendant to be living during the said period." He further found that " plaintiff continued to live and cohabit with the defendant as his wife " after he had heard a " rumour or report that said John M. Hitchings was alive," and that she did not " waive, forfeit or lose her right to claim against the plaintiff that there was a legal waiver on his part of any right he might have had to maintain an action to annul said marriage and to claim against him an equitable estoppel against the maintenance by him of any action to annul said marriage." His sole conclusion of law was that the defendant " is entitled to judgment dismissing the plaintiff's complaint upon the merits, with costs." Exceptions were duly filed by the plaintiff.

If the usual rule governing inconsistent findings is applied, those favorable to the appellant must prevail, for it is well established that " when findings are so inconsistent that it is impossible to harmonize them, 'it is the duty of the court to accept those most favorable to the appellant, as he is entitled to rely upon them in aid of his exceptions.' " (*Elterman* v. *Hyman*, 192 N. Y. 113, 117 ; *City of Buffalo* v. *D., L. & W. R. R. Co.*, 190 N. Y. 84, 98 ; *Israel* v. *Manhattan Ry. Co.*, 158 N. Y. 624, 631.)

The application of that rule would require a reversal of the judgment and a new trial. It is claimed, however, by the defendant that the rule should not be applied in this case because the findings favorable to the plaintiff were inadvertently made. There is no conclusive evidence of this, and to cut out a clear and positive provision from the findings would be as illegal and dangerous as to cut out a like clause from a contract. We have no power to do so for we must take the record as it is made up and certified. If the finding was inadvertent, which we doubt in view of other findings supporting those quoted from the requests, application should have been made at a Special Term held by the justice who decided the case to have the findings corrected so as to accord with his real intention.

It is further claimed that there is no evidence to support the findings favorable to the plaintiff, but that claim is not supported by the record. The deposition of the former husband of the defendant, read in evidence by the plaintiff without objection, tended to show that she knew that her absent husband was alive when she contracted the marriage with the plaintiff, or at least that she could easily have ascertained that fact by the diligent inquiry which the law required her to make before entering into the second marriage. This evidence, if believed by the trial justice, was sufficient to establish as a fact that the defendant knew when she married the plaintiff that her former husband was alive, for knowledge within the true meaning of the statute involves all that a person of ordinary prudence would have discovered under like circumstances by an inquiry conducted in good faith with the diligence required by the importance of the subject. The inquiry must be made with an honest effort to find out the truth, not to overlook it so as to be able to testify that nothing was discovered. A careless or dishonest inquiry affords no protection. (*Gall* v. *Gall*, 114 N. Y. 109, 121; *Matter of Tyler*, 80 Hun, 406.)

The final claim of the defendant is that it was admitted that both parties acted in good faith and that this is conclusive. The record shows that upon the trial, after the plaintiff's counsel had opened and before any evidence was taken, the court asked, " What is the defense ? " The reply of the counsel for the defendant was in substance that the defendant married the plaintiff in the belief that her first husband was dead, under the protection of " the statute, which after an absence of five years permits such marriage, and makes it only voidable, but not void." The court asked, " You claim that the marriage was in good faith by both of them ? " and the defendant's counsel replied, " Yes, sir." The plaintiff's counsel then said, " That does not meet the issue of the case, which is that when a first husband is alive there is no law in our state which permits a woman to have two husbands at the same time." The court thereupon remarked : " I think in some of

these cases I have refused to make a decree where    *    *    *
the marriage was had in good faith and I refused to aid either
party to clear up the situation.    There is no question here but
what the marriage was had in good faith ?"    By plaintiff's coun-
sel : " None whatever."    By defendant's counsel : " On both
sides.    There is this element in this case, the element of waiver
and estoppel, which goes to the same point."    He then outlined
what he regarded as an equitable defense, founded on advice
said to have been given by the plaintiff to the defendant that
she could legally marry him, and on his statement made three
months after their marriage, that if there was a mistake and
Mr. Hitchings was alive by chance, he would stand by her
and never question the validity of his marriage to her.    The
learned counsel continued : " We are here in a court of
equity.    This gentleman asks that equity be done to him, and
we feel that he is in a position where he has waived his right
to a decree of this court, and that he ought not to have a
decree given him."    The court announced that it would hear
the evidence, and thereupon the deposition of John M. Hitch-
ings, the first husband of the defendant, was read in evidence
by the plaintiff, no objection being made by the defendant.
Among other things, he testified as follows : " She (the
defendant) is my lawful wife.    *    *    *    I have at no time
been divorced from her, and my marriage with her is still in
force and was in force on the 18th day of January, 1905.
*    *    *    If Elizabeth W. Hitchings had desired to ascertain
my existence and whereabouts she could have found same
upon inquiry of my brother, Hector M. Hitchings, attorney
at law, 100 William Street, New York City, whom I have
kept constantly informed of my whereabouts at all times, and
with whom the defendant was well acquainted for years, and
with whom she had business dealings in regard to property I
turned over to her and our children.    I have also been in
communication from time to time with our oldest son, George
Hitchings, in New York City, and Melvin J. Palliser."

When the deposition was read in full the court stated that
it would take the facts and exclude the conclusions.    "The

fact that John M. Hitchings was in communication all the time with defendant's son (who lived with her) and also with Hector Hitchings and Mr. Palliser I will take. The statement that she could have informed herself of John M. Hitch_ings' whereabouts if she had taken the trouble I will strike out and exclude."

At this stage of the trial the plaintiff might have rested, for the law did not require him to allege or prove that he acted in good faith; but for some reason that we cannot understand, his counsel continued to call witnesses, and finally he remarked: "I submit that the matter contained in the answer of the defendant, while it might constitute a defense to a prosecution for bigamy in a criminal court, does not under the law of the state confer upon a woman the right to have two husbands at the same time. I further state that we have acted in good faith in this matter, and I ask to call the plaintiff to show that fact." The court consented, and thereupon the plaintiff was sworn and testified *in extenso*. His evidence tended to show that he never advised the defendant that she was free to enter a contract of marriage, and that he married her in good faith, although somewhat carelessly. He also testified that about three months after the marriage the report came to them that Mr. Hitchings was still alive; that he then told the defendant not to bother her head about it at all; that as long as she behaved herself he would stick by her, and that he continued to live with her as his wife for two years after that and until report became fact and this action was commenced. While he was still on the stand, the court said to him: "I don't think you took the precautions to find out whether this man was dead that you ought to have taken before you entered into this marriage. I am not inclined to grant any relief." After some further testimony given by the plaintiff, the court announced definitely that it would grant no decree and the plaintiff excepted. No evidence was given in behalf of the defendant.

As no child had been born to the parties and the first husband of the defendant was alive at the time of the trial, it was

immaterial under the pleadings whether the plaintiff acted in good faith or not, for the marriage was voidable in any event and void in a certain event, which did not depend on his good faith but upon her good faith.   The admission as to her good faith, in view of the attending circumstances, was capable of several constructions.   It might mean good faith in a technical sense, or that she had used due diligence within the meaning of the statute; or that she did not intend to commit bigamy or enter into an adulterous relation; or that she thought that the continuous absence of her first husband for five years without any inquiry being made gave her the right to contract the second marriage.   It was for the trial court to construe the admissions and determine what counsel meant in making them.   Practical construction was at once given by counsel in offering and by the court in receiving testimony bearing directly upon the good faith of the defendant in its full and technical sense.   The counsel for the plaintiff could not have intended to admit that the defendant had acted in good faith in the statutory sense, when the first thing he did was to offer cogent evidence to show that she acted in bad faith by contracting the second marriage when she knew or should have known that her first husband was still living. Counsel for the defendant could not have so understood the admission, when he allowed evidence to come in without objection tending to prove directly the reverse.   No one connected with the trial seems to have understood at the time that such an important fact had been stipulated, but all seemed to regard evidence as necessary and evidence was introduced accordingly.   The admission was apparently regarded as meaning good faith in fact but not in law, or in other words that the defendant supposed that she had the right to marry, even if she had not used due diligence to inquire whether her first husband was alive.   Whatever it meant, we are of the opinion that it did not mean good faith in the statutory sense.

The usual rule governing the subject of inconsistent findings must be applied in this case and according to the findings

most favorable to the plaintiff the marriage in question was void and should have been so adjudged. While it may well be that there are extreme cases where the position of the party seeking relief of the kind sought here is so inequitable that a court of equity will refuse to interfere, no such defense was pleaded or sufficiently proved in the case before us.

The judgment should be reversed and a new trial granted, with costs to abide the final award of costs.

Cullen, Ch. J., Gray, Edward T. Bartlett, Haight, Werner and Hiscock, JJ., concur.

Judgment reversed, etc.