ELEANOR H. DAVIDSON, Respondent, *v.* LOUIS M. REAM, Appellant.

Third Department, May 10, 1917.

**Husband and wife — validity of judgment annulling marriage, where court had no jurisdiction — application by plaintiff to set aside said judgment — due process of law — conduct of plaintiff authorizing divorce no defense — jurisdiction to set aside marriages — common-law marriage — want of jurisdiction.**

The plaintiff in an action for the annulment of her marriage in which a judgment of a court of equity was entered in her favor, although the court had no jurisdiction, there being no statutory ground for the annulment, is entitled to have the judgment set aside, by a justice other than the one who presided at the trial, not because of any equitable consideration for her, but because the judgment does not rest upon jurisdictional facts, and because she has not been deprived of her marital rights by due process of law.

The fact that the conduct of the plaintiff justifies the granting of a divorce is not available to the defendant in this action to prevent the setting aside of the judgment of annulment secured through an imposition upon the court and in which it did not have jurisdiction.

There is no general equitable jurisdiction to set aside marriages    The power to deal with matrimonial actions must be found in the statutes.

Wherever there is want of authority to hear and determine the subject-matter of a controversy, an adjudication upon the merits is a nullity and does not estop even an assenting party.

Where two parties, there being no legal impediment to the contract of a marriage between them, procure a marriage ceremony to be performed in the State of New Jersey, but fail to secure the proper license, and upon returning to this State cohabit as man and wife and mutually introduce each other as husband and wife to many people, a common-law marriage within this State is effected.

Want of jurisdiction, which is a pure question of law, may always be asserted and raised directly or collaterally, either from inspection of the record itself when offered in behalf of the party claiming under it, or upon extraneous proof which is always admissible for that purpose.

APPEAL by the defendant, Louis M. Ream, from an order of the Supreme Court, made at the Saratoga Special Term and entered in the office of the clerk of the county of Rensselaer on the 14th day of November, 1916, resettling a prior order

entered in said clerk's office on the 30th day of October, 1916, setting aside and vacating and declaring void and of no effect the judgment herein, entered on the 16th day of January, 1912, annulling a marriage between the parties.

Also an appeal from an order entered in said clerk's office on or about the 6th day of March, 1917, denying defendant's motion for a rehearing upon the ground of newly-discovered evidence.

*Arthur L. Andrews* [*Lindley M. Garrison* of counsel], for the appellant.

*Edgar T. Brackett,* for the respondent.

WOODWARD, J.:

The action in which these motions have been made and decided was instituted in November, 1911. They have been argued at the same term of court, and may properly be disposed of in a single opinion. There is much in the affidavits before the court upon the several motions which tends to dissipate the theory that the plaintiff is a wronged woman, or that she has any claims upon a court of equity, but none of these things affords any justification for the reversal of the orders here on appeal. Whatever might be the disposition of this court, if considering an application of the plaintiff for equitable relief, the situation here is that the plaintiff is asking to be relieved from a judgment which was procured in a court of equity, where that court was without jurisdiction to act. The lack of jurisdiction makes the original judgment and the record of its action utterly void and unavailable for any purpose, and while the plaintiff might rely upon this situation, she is at liberty by a more direct and summary proceeding to have the judgment set aside and vacated, and this right is not affected by the fact that this application is made before a different justice from the one who presided at the time the judgment was granted. (*Kamp* v. *Kamp,* 59 N. Y. 212, 216–218, and authorities there cited.) The application in the case now before us is not to reverse the judgment of the court, or to consider the merits of the controversy, but to prevent the enforcement or recognition of a void

judgment (*Kamp* v. *Kamp, supra*), and the fact that the plaintiff was, in form at least, the moving party in the original action does not estop her from invoking the aid of this court. Wherever there is want of authority to hear and determine the subject-matter of the controversy an adjudication upon the merits is a nullity and does not estop even an assenting party. (*Matter of Walker*, 136 N. Y. 20, 29, and authority there cited; *Risley* v. *Phenix Bank of City of New York*, 83 id. 318, 337; *O'Donoghue* v. *Boies*, 159 id. 87, 98, 99, and authorities cited.) The history of this litigation is so fully covered by the able and learned opinion of the court below (97 Misc. Rep. 89) that it seems unnecessary to go into it further, except to point out that the Court of Appeals has, in an opinion rendered since the motion was decided, held squarely that a common-law marriage is valid in the State of New York, and was at the time this marriage was contracted (*Matter of Ziegler* v. *Cassidy's Sons*, 220 N. Y. 98, 111), and the facts which are now before the court plainly show that there was a valid marriage between the parties. Both the plaintiff and defendant were over twenty-one years of age at the time of this marriage, and no legal impediment to the contracting of a marriage on the part of either of them is suggested. They became engaged to marry within the State of New York; they made arrangements to go from the State of New York into the adjoining State of New Jersey for a marriage ceremony; they went into New Jersey and apparently made an effort in good faith to have a ceremonial marriage, and a ceremonial marriage, evidenced by a certificate in due form, was performed by one who is conceded to have had the general powers necessary to such a ceremony, and the only defect in the marriage which is suggested is that the parties, though trying to procure a marriage license, as provided by the laws of New Jersey, failed to secure the proper license. After this ceremony was performed the parties returned to New York, cohabitated as man and wife, and mutually introduced each other as husband and wife to many people, both in the States of New York and New Jersey. It is true that the plaintiff in her complaint alleges that " neither the plaintiff nor the defendant desired, intended or contemplated a common-law marriage, and did not undertake, enter into or contract a

common-law marriage," but the history of this litigation, and the fact that the court had no jurisdiction of an action to set aside a valid marriage, does not justify the conclusion. What the parties actually did, not what the designing and deluded plaintiff says, is the controlling element, and it is not to be doubted that the conduct of the parties, under all the circumstances, resulted in a common-law marriage within the State of New York, regardless of the effect of the New Jersey statute. Assume for the moment that the ceremony was utterly void. That could have no affirmative effect; it was merely as if no ceremony had been pronounced. It took nothing from the intent of the parties to enter into the marriage relation. That intent was formed in the State of New York; it is conceded that there was an engagement which would have given rise to an action for breach of promise if the defendant had failed to perform. They went into the State of New Jersey, and, we may assume, took no action looking to the consummation of the engagement — the intent to marry. They came back into the State of New York with no intent of not being married; they publicly assumed the relations of husband and wife; they cohabited and introduced each other as husband and wife to many relatives and friends, and this clearly constituted a common-law marriage within the State of New York. These facts were not disclosed in the pleadings in the original action, and no cause of action known to the laws of this State was pleaded. To permit the judgment to stand is to give countenance to a proceeding which cannot be justified upon any sound code of ethics, or considerations of public policy; we cannot permit our courts to become the mere auxiliaries of those who make use of the forms of law to indulge their passions. Conceding, therefore, that the plaintiff appears in the proceeding as a mere adventuress, and that she is not entitled to equitable consideration, she is yet asking this court to do what the court might properly do upon its own motion (*Davidsburgh* v. *Knickerbocker Life Insurance Co.,* 90 N. Y. 526, 529, 530), and as it leaves the parties exactly where they were at the time the original action was instituted, we may assume that no legal wrong will befall either of them.

The common-law marriage which would thus exist in the

State of New York must be presumed to have resulted equally in the State of New Jersey, which, being one of the original States, is presumed to have the same common law as ourselves, and section 11 of chapter 274 of the Laws of 1910 of the State of New Jersey provides that " nothing in this act contained shall be deemed or taken to render any common law or other marriage, otherwise lawful, invalid by reason of the failure to take out a license as is herein provided." It is thus clear that the only objection urged against the validity of the marriage between the parties is without force, and that the judgment in the original action has no legitimate foundation, while the matters pointed out by the learned court at Special Term at folios 1236, 1239, 1295, 1296, and reported in 97 Miscellaneous Reports at pp. 102, 103, 118, 119, might properly be considered in connection with the recent rulings of the court in *Matter of Palmieri* (176 App. Div. 58). There can be no doubt that the original judgment would not have been entered had the court been properly advised of the true facts in the case, and it is due to the dignity of this tribunal that the order appealed from be affirmed.

This view of the case, of course, makes it unnecessary to consider seriously the appeals from the orders denying the motions for a rehearing on the ground of newly-discovered evidence, and the motion for a resettlement of the order. If the conduct of the plaintiff has been such as justifies the granting of a divorce there is nothing to prevent the defendant coming into the courts of this State and maintaining his action; but such conduct is not available to the defendant in this action to prevent the setting aside of a judgment secured through an imposition upon the court, and in which the court did not have jurisdiction. There is no general equitable jurisdiction to set aside marriages; the power to deal with matrimonial actions must be found in the statutes (*Stokes* v. *Stokes*, 198 N. Y. 301, 304; *Walter* v. *Walter*, 217 id. 439), and we know of no provision of the Code of Civil Procedure (See Dom. Rel. Law [Consol. Laws, chap. 14; Laws of 1909, chap. 19], § 7) which permits of an action to annul a marriage between two persons of full age, sound mind, without living husband or wife, and free from incapacitating physical defects. Section 1742 of the Code of Civil Pro-

cedure permits of an action by a woman married under the age of sixteen years, and section 1743 provides for an action to procure a judgment declaring a marriage contract void and annulling the marriage for certain specified causes, but among these there are none covered by the pleadings in the original action, and the express mention of these specified causes of course operates to exclude all others. The rule is established that " ' a court authorized by statute to entertain jurisdiction in a particular case only, if it undertakes to exercise the power and jurisdiction conferred in a case to which the statute has no application, acquires no jurisdiction, and its judgment is a nullity, and will be so treated when it comes in question, either directly or collaterally.' " (*O'Donoghue* v. *Boies*, 159 N. Y. 87, 99, and authorities there cited.) This is exactly the situation presented here; the cause of action attempted to be asserted in the action is not one of those which are enumerated in the Code of Civil Procedure, and the plaintiff in that action might, if she choose, proceed exactly as though no judgment had in form been entered. She has chosen to proceed directly by motion in the action, and no matter what her conduct may have been, she is entitled to the order of this court, not because of any equitable consideration for her, but because the judgment does not rest upon jurisdictional facts — because she has not been deprived of her marital rights by due process of law. The want of jurisdiction, which is a pure question of law, may always be asserted and raised directly or collaterally, either from an inspection of the record itself when offered in behalf of the party claiming under it, or upon extraneous proof, which is always admissible for that purpose (*O'Donoghue* v. *Boies, supra*), and misconduct does not deprive people of their equal rights under the law. The plaintiff here, if as bad as she has pleaded herself, supplemented by the affidavits of those who have sought to prevent the granting of the order, is still entitled to her rights under the law. As Lord CHATHAM has so well said, " In his person, though he were the worst of men, I contend for the safety and security of the best; and, God forbid, my Lords, that there should be a power in this country of measuring the civil rights of the subject by his moral character, or by any other rule but the fixed laws of

the land." (Celebrated Speeches of Chatham, Burke and Erskine, pp. 24, 25.)

The orders appealed from should be affirmed, with costs.

All concurred; KELLOGG, P. J., in result.

Orders affirmed, with ten dollars costs and disbursements in each case.