## In the Matter of the Estate of Louis Levy, Deceased.

Surrogate's Court, New York County, June 13, 1938.

*Morris Schaeffer,* for Samuel Levy, proponent.
*Morris Ehrlich,* for Rachel Levy, contestant.

DELEHANTY, S. Deceased died on April 28, 1938. A paper purporting to have been executed by him on the previous date has been offered for probate by his son, Samuel Levy. Rachel Levy, claiming to be the deceased's widow, appeared by attorney and filed objections to the probate though she was not cited in the proceeding. Proponent thereupon moved to strike out her appearance and objections on the ground that the contestant was never married to deceased.

On the issue of status thus formulated a hearing was had at which it developed that some time prior to January 31, 1937, invitations to attend the wedding of deceased and contestant were issued to various persons. On that date and in the presence of guests assembled at 244 Madison street a marriage ceremony was there performed by a rabbi related by marriage to deceased. To the witnesses to the marriage who signed what amounts to a memorial of the marriage the ceremony appeared to be in accordance with Jewish ritual. The same belief was engendered in other witnesses who observed the performance. After the ceremony the couple and their guests attended a dinner given by deceased in honor of the occasion. Thereafter deceased and contestant cohabited at an apartment provided by the former.

This marriage ceremony was not preceded by the issuance of a license to marry. If there were a genuine ceremony the rabbi who performed it thus came within the operation of section 17 of the Domestic Relations Law which states that " If any clergyman * * * shall solemnize or presume to solemnize any marriage between any parties without a license being presented to him * * * he shall be guilty of a misdemeanor." Testifying for the proponent the rabbi said that deceased had asked him to perform a ceremony without a license because he did not really want to marry the contestant at that time but desired to have her as a housekeeper only. The rabbi in effect testified that the ceremony was intended to deceive the wedding guests and the world at large. He first testified that contestant was present when arrangements for the alleged mock marriage were being made with deceased. On cross-examination he admitted that she was not present. In his oration at deceased's funeral the rabbi exhorted the kin of deceased to care properly for the widow — meaning the contestant here. The court finds as a fact that appearance and reality coincided on January 31, 1937. The principals intended a marriage and the rabbi solemnized a marriage.

A question of law remains. Did failure by the principals to procure a license to marry render the marriage void? This

question is expressly answered by section 25 of the Domestic Relations Law which, in part, provides as follows: " Nothing in this article contained shall be construed to render void by reason of a failure to procure a marriage license any marriage solemnized between persons of full age." The effect of failure to procure a marriage license is stated fully in *Davidson* v. *Ream* (97 Misc. 89, 105, 106; affd., 178 App. Div. 362). Discussing the effect of the New Jersey statutes respecting marriage licenses similar to those in effect in New York the court there said: " It is uniformly held in those States in which a license is required that a marriage celebrated without a license, although the persons officiating or the parties may be punished criminally, is valid unless the statute contains mandatory provisions that the marriage shall be void." (To the same effect see cases at 11 L. R. A. 587; 15 L. R. A. [N. S.] 463; L. R. A. 1917C, 1017; 4 A. L. R. 492; 6 id. 1340.)

The application to strike out the appearance and objections of the widow of deceased is accordingly denied. Submit, on notice, order accordingly.