ROSE ALEXANDRE, Doing Business as ALEXANDRE'S PHOTO STUDIO, Plaintiff, *v.* WESTCHESTER NEWSPAPERS, INC., Defendant.

City Court of Mount Vernon, November, 1938.

*Harry Zimmerman* [*Harry Krauss* of counsel], for the plaintiff.

*Gerlach, Reeback & Fuller* [*Joseph Reeback* of counsel], for the defendant.

McKENNELL, Acting J. Upon this motion to set aside a verdict in plaintiff's favor, defendant urges, *first*, that the verdict is against the weight of the evidence, and, *second*, that, as to all but a small part of the recovery, it is contrary to law, in that the transactions upon which it is based were illegal and void and the contract relating thereto is unenforcible.

As to the first ground: Mr. Kenney, formerly employed by defendant as city editor of the Mount Vernon *Daily Argus*, one of the newspapers published by defendant, testified that he made, with plaintiff's husband and agent, the contract set forth in plaintiff's first cause of action and that the making thereof was within the scope of his duties as city editor. His power to bind defendant by such a contract was not seriously questioned. The written instructions issued by defendant's president to the editors of its various newspapers impliedly recognized the existence of such power and merely advised that it be cautiously exercised. Plaintiff's husband also testified to the making of that agreement and that it was ratified and continued by Mr. Roth, who succeeded Mr. Kenney as city editor and who, according to his own testimony, was authorized, by virtue of his position, to contract in defendant's behalf for the purchase of photographs if and when he deemed it necessary. Mr. Roth denied having had the conversations to which plaintiff's husband testified and there were many facts adduced in evidence which tended to cast great doubt upon the making and continuation of the alleged contract, although they did not preclude the possibility thereof. The issue in that regard was clearly one for the jury to determine; and, under the well-settled, applicable rule, I am not at liberty to disturb the jury's finding even though, if I had been the trier of the facts, I might have arrived at a different conclusion.

The second ground of the motion involves the question of the legality of the contract under section 50 of the Civil Rights Law, which reads: " A person, firm or corporation that uses for advertising purposes or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor."

It was stipulated that none of the photographs for which plaintiff sought to recover was used " for advertising purposes;" but the jury were instructed that the sale by plaintiff to defendant of such of those photographs which were portraits of living persons constituted a use thereof " for the purposes of trade." (See *Holmes* v. *Underwood & Underwood*, 225 App. Div. 360.) It was conceded that no written consent of any person whose portrait was so used had been obtained; but plaintiff's husband testified that, in each instance, before any of such portraits (of which there were more than one hundred) was sold to defendant, he had procured, from the subject of the portrait, an oral consent to the sale. That testimony was uncontradicted except as it related to a few of the photographs, and as to most, if not all, of the latter plaintiff withdrew her claim. The question of the credibility of this testimony was submitted to the jury, who evidently believed it.

In charging the jury I stated, in substance, that the property right in the respective portraits remained in the individual whose picture was taken (*Holmes* case, *supra; White Studio, Inc.*, v. *Dreyfoos*, 156 App. Div. 762); that the right to invoke the protection of section 50 was personal to that individual; that it was competent for him or her to waive the requirement that the consent specified in the statute should be in writing; and that, as to each portrait concerning which the jury found that an oral consent to the sale was given by the subject and which had been reproduced and published by defendant without an accompanying " credit line," they were at liberty to award a verdict in favor of plaintiff provided they found that defendant had expressly or impliedly agreed to pay for the picture.

The instant motion calls for a reconsideration of the charge.

No reported case has been cited by counsel or discovered by me in which the precise point here involved has ever been decided. A correct solution of the problem requires a consideration of the history of section 50 and its companion section 51 and the evils sought to be remedied by those enactments. Prior to 1903 the " right of privacy " was not cognizable in New York either at law or in equity. (*Roberson* v. *Rochester Folding Box Co.*, 171 N. Y. 538.) In response to a suggestion contained in the opinion in the

case cited, the Legislature enacted chapter 132 of the Laws of 1903, the first section of which is now embodied in section 50 of the Civil Rights Law and the second section of which is incorporated in the first sentence of section 51 of that law. In declaring the act of 1903 constitutional, the court, in *Rhodes* v. *Sperry & Hutchinson Co.* (193 N. Y. 223), said (pp. 227, 228): " It is to be observed that the statute does not deny the right of any person to make such use of his own portrait as he may see fit. The Legislature has not undertaken to restrict his liberty in this respect to any extent whatever. It is only the use of his name or picture by others and by others for particular purposes that is affected by the statute. * * * The statute merely recognizes and enforces the right of a person to control the use of his name or portrait by others so far as advertising or trade purposes are concerned. This right of control in the person whose name or picture is sought to be used for such purposes is not limited by the statute."

It is true that the court commented on the fact that the statute requires that the transfer of the right to use the picture for advertising or trade purposes " shall be evidenced by writing;" but that statement did not refer to the rights as between the photographer and the person whose portrait had been taken, because the court expressly refrained from passing thereon. (See p. 232.) It is true, also, that in actions between the subjects of portraits and parties who had used those portraits for advertising or trade purposes it has been held that no oral consent and no acquiescence in such use will prevent the recovery of at least nominal damages or the granting of an injunction against further use of the picture (*Wyatt* v. *McCreery & Co.*, 126 App. Div. 650; *Wyatt* v. *Wanamaker*, 58 Misc. 429; affd., 126 App. Div. 656; *Almind* v. *Sea Beach R. Co.*, 157 id. 230, revg. 78 Misc. 445; *Harris* v. *Gossard Co., Inc.*, 194 App. Div. 688; *Hammond* v. *Crowell Pub. Co.*, 253 id. 205); but none of the cases last cited was between the subject of the picture and the photographer nor did any of them hold that a photographer who sells and delivers to another a copy of a portrait, pursuant to the oral consent, authorization or direction of the subject of the portrait, is guilty of a misdemeanor. Indeed, in *Wyatt* v. *McCreery & Co* (*supra*) the court said (p. 655): " No one would dispute the right of each individual to dispose of his own portraits or photographs as he pleases, and the validity of any restriction as to that right may well be doubted."

The point decided in that case was not as to the right of Hall, the photographer, to sell the plaintiff's portrait, in accordance with her oral permission to him, but, rather, the right of the defendant,

which had purchased framed copies of the photograph from one to whom Hall had sold it; to sell such framed copies as articles of merchandise. (See statement of facts in opinion of TRUAX, J., in companion case of *Wyatt v. Wanamaker, supra*); and it was held that the defendant acquired no such right in the absence of a written consent given to it, even though the sale of the original portrait by Hall, with the plaintiff's permission, were legal. Mr. Justice TRUAX, in the *Wanamaker* case, impliedly recognized that the oral consent given to Hall would be a defense to an action against Hall, but held that such consent did not protect the defendant in its subsequent commercial use of the picture without having itself obtained the plaintiff's consent thereto.

The suggestion in *Binns v. Vitagraph Co.* (210 N. Y. 51, 58, 59) that the Legislature clarify the statute by expressly permitting the use of a person's name, portrait or picture for purposes of trade if the oral assent of such person is obtained therefor, does not, in my opinion, imply that as the statute now reads an oral consent is nugatory in a case such as the instant one. What was said in that connection in the *Binns* case was not necessary to the decision because in that case there was no consent either written or oral.

The cases hereinbefore cited and others which have been examined in which the sections mentioned have been considered all indicate most clearly that the right of privacy created by the statute and which that statute is designed to enforce is a right personal to the subject of the portrait. The use in trade of a person's picture is not *malum in se*. This appears from the decision in the *Roberson* case (*supra*) and from the fact that section 51 expressly excepts from its operation the exhibition of such a portrait by the photographer in or about his establishment unless continued after written objection by the person portrayed.

Upon the evidence in the instant action the jury were at liberty to find that the persons whose portraits were sold, being desirous of publicity, authorized plaintiff to make " glossy prints " of their photographs to facilitate the production of the " cuts " by which news articles relating to their activities might be illustrated and to deliver those prints to defendant upon plaintiff's being paid therefor. Those persons were free to so dispose of their portraits and they were at liberty to waive the statutory requirement for their written consent to the sales of the prints, since the statute was solely for their benefit and did not relate to any matter in which the general public was interested. (*Phyfe v. Eimer*, 45 N. Y. 102; *City of Ithaca v. Ithaca Street R. Co.*, 145 App. Div. 675; *Matter of Moore*, 165 Misc. 683, 689; *Stevens v. Stevens*, 248 App. Div. 344, 348;

affd., 273 N. Y. 157; *Morse* v. *Morse Dry Dock & Repair Co.*, 249 App. Div. 764; *City of Oswego* v. *Montcalm Dock Co.*, 245 id. 555, 560; *People ex rel. Jannicky* v. *Warden*, 231 id. 131, 137; *Parthey* v. *Beyer*, 228 id. 308, 313; *Sentenis* v. *Ladew*, 140 N. Y. 463, 466.) In the case last cited the court said: " A party may waive a rule of law or a statute, or even a constitutional provision enacted for his benefit or protection, where it is exclusively a matter of private right, and no considerations of public policy or morals are involved."

In view of the rule thus declared, it is not perceived wherein, under the circumstances here existing, the sale of the prints by plaintiff was rendered unlawful.

Defendant's learned counsel contends that the absence of written consent makes the deliveries of the photographs a misdemeanor and that plaintiff cannot enforce an agreement based upon her doing of acts so declared to be illegal and criminal. In support of this contention he cites, among other cases, *Reiner* v. *North American Newspaper Alliance* (259 N. Y. 250) and *Sturm* v. *Truby* (245 App. Div. 357). In all the cases so cited by him the transactions condemned as illegal were either contrary to good morals or public policy or in contravention of statutes enacted for the protection of the public health or safety, the prevention of frauds or the like, and which statutes were fraught with public interest. The statute here involved is not of that character and the cases so cited are not controlling. The acts here claimed to have been illegal are not within the intent of the statute even though they may be within the letter thereof, and, therefore, they are not to be deemed prohibited thereby, but are, instead, to be considered as impliedly excepted. (*Delafield* v. *Brady*, 108 N. Y. 524, 529.)

Further support for the conclusion here reached is found in cases dealing with the effect of statutes prohibiting certain acts or declaring them criminal, such as the usury statute (*Williams* v. *Tilt*, 36 N. Y. 319; *Crittenden* v. *Barkin*, 212 App. Div. 232; affd., 242 N. Y. 508; *Matter of De Lamar*, 203 App. Div. 638, 641; affd., 236 N. Y. 604); the statutes requiring the filing of a certificate of the use of an assumed name and prohibiting the use of a fictitious copartnership name (*Gay* v. *Seibold*, 97 N. Y. 472; *McArdle* v. *Thames Iron Works*, 96 App. Div. 139; *Castle Bros.* v. *Graham*, 87 id. 97; affd., 180 N. Y. 553); the statute requiring a marriage license (*Davidson* v. *Ream*, 97 Misc. 89, 105, 106; affd., 178 App. Div. 362; *Matter of Levy*, 168 Misc. 864), and certain of the statutes requiring occupational licenses, etc. (*Rosasco Creameries, Inc.*, v. *Cohen*, 276 N. Y. 274, and cases cited; *Sheridan* v. *Weber*, 252 App. Div. 398; *Bovino* v. *Berberian*, 255 id. 143.)

The motion to set aside the verdict is denied.