Callahan, J.
(dissenting). In this action for divorce the defendant counterclaimed for annulment on the ground that the marriage was void because the plaintiff had a husband living and undivorced at the time of contracting the union (Civ. Prae. Act, §§ 1132, 1134; Domestic Relations Law, § 6).
The plaintiff’s reply in effect admitted that she was the wife of another when she married the defendant, but claimed that the defendant had full knowledge of the fact and induced the plaintiff by false representations to believe that she was free to marry him.
The complaint in the action was withdrawn and only the counterclaim for annulment litigated on the trial.
It appears that the plaintiff contracted a ceremonial marriage with the defendant in Hoboken, New Jersey, on December 26, 1936. The plaintiff was then the wife of one Corry. There was, however, an action by the plaintiff against Corry for divorce pending in the Supreme Court, New York County. The uncontested hearing in that suit was held on January 12, 1937, and resulted in an interlocutory decree in the plaintiff’s favor on February 1,1937. The interlocutory judgment became final on May 1, 1937. There was a daughter born of the marriage between the parties on October 22, 1937.
The trial court made a finding of the defendant’s knowledge as to the plaintiff’s incapacity to marry by reason of the fact that she was the lawful wife of another still living at the time of her marriage to him. It found that the defendant was aware of the plaintiff’s pending action against Corry for divorce, and that such action had not been finally determined and no judgment entered in the plaintiff’s favor. It was also found that the defendant provided the plaintiff with funds to *811 prosecute the action and further assisted by accompanying the plaintiff to her lawyer’s office and to court. There were additional findings that the defendant was anxious to marry the plaintiff and unwilling to wait until final determination of her action of divorce against Corry, and that the defendant with knowledge of her existing marriage induced the plaintiff to marry him in New Jersey on the representation that such a marriage in any State other than New York would be valid. The plaintiff was found to have entered into marriage with the defendant in good faith and relying on his representations. It was further found that after the marriage in New Jersey the parties immediately returned to New York, where they continued to live and cohabited as man and wife. The trial court accordingly concluded as a matter of law that the defendant was not acting in good faith in seeking annulment of the marriage and did not come into court with clean hands. It held that the defendant was estopped from questioning the validity of his marriage to the plaintiff and dismissed the counterclaim in the action.
It may be conceded that the findings of the trial court have substantial support in the evidence, except its conclusion as to the wife’s “ good faith ”. Nevertheless, we think that the annulment should have been granted in this ease. (See Davis v. Davis, 279 N. Y. 657; Slater v. Kenny, 265 App. Div. 963.) The Legislature has unmistakably declared the public policy of this State against polygamous marriages. “A marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living” (Domestic Relations Law, § 6). Such a marriage is void ab initio and cannot be ratified by subsequent acts of the parties (McCullen v. McCullen, 162 App. Div. 599). The subsequent divorce of the plaintiff from her first husband did not operate to validate her marriage to the defendant (Earle v. Earle, 141 App. Div. 611). This was void from its inception and took place with knowledge of the binding nature of the plaintiff’s prior marriage and in defiance of our public policy. The interest of the State in the marital status of the parties would seem to require a decree in the defendant’s favor declaring the nullity of his marriage to the plaintiff. To refuse relief on the ground of inequitable conduct on the defendant’s part amounts to a failure to vindicate our public policy in regard to marriage.
We have found no binding precedent that authorizes a court of equity to withhold a judgment of annulment under the circumstances of this ease on any theory of estoppel or “unclean hands”. The most that can be said for such proposition is that it appears to be an open question in this State under the decisions of our court of last resort.
In Stokes v. Stokes (198 N. Y. 301) the plaintiff sought an annulment of his marriage to the defendant. At the time of the marriage the defendant’s first husband had been absent for more than five years. The plaintiff, however, continued to live with the defendant long after it was rumored or reported to him that the defendant’s husband by her former marriage was still alive. Whether the marriage between the parties to the action was void or voidable under the circumstances of the ease was affected by factual issues as to the good faith of the wife and knowledge that her absent husband was living and undivorced when she contracted the second marriage-with the plaintiff. The trial court dismissed the complaint on the theory that the plaintiff’s conduct estopped him from obtaining an annulment. However, on reversal of the judgment and ordering a new trial the Court of Appeals said (p. 312) : “ While it may well be that there are extreme cases where the position of the party seeking relief of the kind sought here is so inequitable that a court of equity will refuse to interfere, no such defense was pleaded or sufficiently proved in the ease before us.”
*812 In Heller v. Heller (285 N. Y. 572) the plaintiff sued to annul his marriage to the defendant on the ground that the wife’s divorce from her first husband in Nevada was void. The plaintiff contracted the marriage with full knowledge of the circumstances and continued to cohabit with the defendant as her husband after acquiring knowledge of the invalidity of the foreign decree. The trial court held that the plaintiff was not entitled to equitable relief and dismissed the complaint on the ground that the plaintiff did not come into court with clean hands. The Court of Appeals affirmed the judgment on the ground that the Nevada divorce obtained by the plaintiff’s wife from her first husband would be recognized under the rule of comity, and refused to pass on the question whether the doctrine of “ clean hands ” would apply to estop the plaintiff from prosecuting the action for annulment.
It should be remembered, however, that we are not dealing with precisely the same problem as was presented in the Stokes and Heller cases (supra). This case is not concerned with a situation where one of the parties has contracted a second marriage after the prolonged absence of a first spouse, nor does it involve any question as to the validity or effectiveness of a foreign judgment of divorce procured prior to the disputed marriage.
In Brown v. Brown (153 App. Div. 645) this court had occasion to review the Stokes case (supra) and its bearing on our prior decision in Berry v. Berry (130 App. Div. 53) applying the principle of estoppel or “ clean hands ” rule to deny relief in an annulment suit. The conclusion was reached that the Berry case (supra) should be limited to its precise facts and the doctrine applied only to a situation where the person seeking relief is a guilty party and invokes the aid of equity to avoid the consequence of his own wrong in contracting a second marriage without reason to believe the first spouse dead.
The defendant asking for an annulment in this ease is not a guilty party in the sense of being under a disability to marry at the time of his marriage to the plaintiff. While he knew of the plaintiff’s subsisting marriage, it is also true that the plaintiff herself knew that no divorce had been obtained in her pending action against the husband of her former marriage. At least to this extent the parties must be regarded as standing in pari delicto.
In Sehouler on Marriage, Divorce, Separation and Domestic Relations (Yol. 2, 6th ed., § 1162), it is said:
“ There can be no estoppel where the marriage is absolutely void, and the rule of pari delietu will not be applied to prevent relief in a suit to annul and set aside a void marriage, as that is a matter in which the State is an interested party.
“ There is a growing feeling that the doctrine of pari delietu should not be applied to actions for nullity of marriage on the ground that the State is interested in the question, that the decree of annulment would establish the status of the parties beyond any doubt and also the status of any future wife and children in ease the defendant should remarry. So a marriage may be annulled under this doctrine even though both parties knew at the time it was contracted that one of them had a spouse living or that the marriage was otherwise defective.”
On the present state of the authorities we are led to believe that the rule of estoppel should not apply in this case directly involving the marital status to defeat an adjudication or declaration of nullity of a marriage that is void from its inception and not merely voidable. “ To hold otherwise would be to say that parties may by their conduct or agreement effect a marital status repugnant to the public policy of the state.” (Beaudoin v. Beaudoin, 270 App. Div. 631, 633.) *813 The considerations that control in a case of this kind have been aptly expressed in Anonymous v. Anonymous (186 Misc. 772, 776) as follows: “Marriage is not only a civil contract; it is a status to which the State is a party. Her second marriage being void, the doctrine of ‘ clean hands ’ has no application, nor may any phase of estoppel be invoked. The hardship or inequity of a particular situation must yield to the paramount public policy of the State ”. (See, also, Davis v. Green, 91 N. J. Eq. 17; Simmons v. Simmons, 19 F. 2d. 690; 3 Nelson on Divorce and Annulment [2d ed.], §§ 31.14, 31.46.)
For these reasons we are persuaded that it was error to dismiss the defendant’s counterclaim in this action. We think that the judgment appealed from should be reversed and a decree entered in favor of the defendant declaring the nullity of the marriage. The child of the parties, however, is the legitimate issue of each parent and entitled to be supported by the defendant. In our opinion the sum of $20 per week for this purpose would be proper in the circumstances of this case. The judgment of annulment should contain appropriate provisions to this effect and for the award of custody to the plaintiff. (See Civ. Prac. Act, §§ 1135, 1140.)
Peek, P. J., Glennon and Cohn, JJ., concur in decision; Callahan, J., dissents in opinion in which Dore, J., concurs.
Judgment, so far as appealed from, modified by reducing the allowance for the maintenance, support and education of the child to $20 per week and, as so modified, affirmed. No opinion. Settle order on notice.