(55 App. Div. 534.)

### CIRCUS v. INDEPENDENT ORDER AHAWAS ISRAEL.

(Supreme Court, Appellate Division, First Department. December 7, 1900.)

1. DESERTED WIFE—SUBSEQUENT MARRIAGE—VALIDITY.

2 Rev. St. p. 139, § 6, provides that, where a husband absents himself from his wife for five successive years without being known to her to be living during such time, her remarriage during his lifetime shall only be void from the time its nullity is pronounced by a court of competent authority. A wife of an absent husband, who was never afterwards heard from, desiring to avail herself thereof, inquired about him of a man with whom she had seen him talk, and of others, but without obtaining information. She was an ignorant foreigner, with few acquaintances or oppor-

tunities of acquiring a knowledge of his whereabouts. *Held*, that she acted in good faith, and her subsequent marriage was valid.

2. BENEFICIAL ASSOCIATIONS—CONSTITUTION—AUTHORITY OF SECRETARY TO SUSPEND LODGE.

Where, by a beneficial association's constitution, general power to suspend a lodge is given to the grand lodge, with authority to the executive committee to suspend, until the next meeting of the grand lodge, the charter of a lodge refusing to obey the rules, and no such power is otherwise conferred on any officer thereof, a lodge cannot be suspended by the action of the association secretary, though it may be in default in the payment of its dues.

3. BENEFICIAL ASSOCIATIONS—WITHDRAWAL OF LODGE—ACTION BY INDIVIDUALS.

The conclusion of members of a lodge to withdraw from an association, reached at an informal meeting, where they acted individually, and not as a lodge, is inoperative.

Appeal from judgment on report of referee.

Action by Paulina Circus against the Independent Order Ahawas Israel. From a judgment for plaintiff entered on the report of a referee, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, PATTERSON, and INGRAHAM, JJ.

Alfred B. Jaworower, for appellant.

Eugene I. Yuells, for respondent.

RUMSEY, J.   The action was brought against the defendant, as a fraternal organization, to recover the sum of $500 upon a certificate issued to one Schaie Circus, the husband of the plaintiff, by which the defendant agreed at his death to pay the amount named in the certificate to his widow.   The defenses were:   First, that the plaintiff was not the widow of Schaie Circus; and, secondly, that the subordinate lodge of which Circus was a member had been suspended before his death for the nonpayment of dues, and that the effect of such suspension was to forfeit all benefits due to either him or his beneficiary under the certificate.   The referee found for the plaintiff upon each question of fact raised by the answer, and ordered judgment for her.   The question simply is whether the findings of the referee were correct.

It is conceded that the plaintiff, who is a Roumanian, had lived in that country with one Brenner, and by him had had four children; that she came to this country after having lived with him for 17 years; that after she had been here for a year and a half she was followed by Brenner, and lived with him again for about 18 months, when he left her, and she had never seen or heard from him since. His desertion of her took place about six years before her marriage to Circus.   The defendant claims that she had been married to Brenner, and was his wife at the time she contracted the marriage with Circus.   The referee determined that she had been married to Brenner, but that, because he had absented himself from her for five successive years, without being known to her to be alive during that time, her marriage with Circus was not void.   The statute in that regard provides that if "any person whose husband or wife shall have absented himself or herself for the space of five successive years

without being known to such person to be living during that time, shall marry during the lifetime of such absent husband or wife, the marriage shall be void only from the time that its nullity shall be pronounced by a court of competent authority." 2 Rev. St. p. 139, § 6. The person desiring to avail herself of this statute is required to act in good faith, and use all such means to obtain information with respect to the absent spouse as reasonable persons would do under the circumstances. Gall v. Gall, 114 N. Y. 109, 21 N. E. 106. She cannot shut her eyes and ears and make no effort to ascertain the facts, and then, because she knows nothing, marry at the end of the five years, relying merely upon the absence of the other person. So the question is whether in this case the plaintiff did what a reasonable person would do under the circumstances to ascertain the whereabouts or the existence of Brenner after he had left her. In such cases one is called upon only to make use of the opportunities which she has to get information, and if she fairly makes use of those opportunities, and obtains no information, she is entitled to act upon the presumption which the statute creates. It is evident in this case that the plaintiff was an ignorant person, having very few acquaintances in this country, and with very few opportunities of getting information as to the existence or whereabouts of Brenner. It appeared that, although Brenner had left her more than nine years before the time of the trial, he had never been seen or heard from since. She testified that she had inquired about him from the one man with whom she had seen him talk, and that she had inquired of others, but no one knew anything. She also testified that she had written to no one, because there was no one to write to. Taking all these things together, I think that the referee was justified in coming to the conclusion that the plaintiff had acted in good faith, and that her marriage with Circus was valid.

But it is claimed by the defendant that the subordinate lodge to which Circus had belonged had been suspended before his death for the nonpayment of dues, and therefore all his rights and the rights of his beneficiary to the payment of this certificate had been lost. The constitution and by-laws of the order provide that if a subordinate lodge fails to pay its assessments, and payment is not made within five days of the mailing of a notice demanding payment, it shall be declared to be in arrears and suspended, and none of its members shall thenceforth be entitled to any of the death benefits under the certificate, and all persons who would otherwise be beneficiaries by reason of said membership shall likewise forfeit all claims to the death benefit. It was made to appear that on the 20th day of June, 1898, the subordinate lodge to which Circus belonged had made two successive defaults in the payment of its dues, and that the notice provided by the by-laws had been sent to it, requiring these assessments to be paid on the 2d day of July, or otherwise the lodge and every member of it would be stricken from the order. The general secretary testified that the assessment was not paid by that day, and that thereupon he had suspended the lodge. There is no proof that any action was taken by any other officer, or by the grand lodge of the organization. We do not think that this action

of the general secretary operated to suspend the lodge. General power to suspend a lodge is given by article 3 of the constitution to the grand lodge, with authority to the executive committee to suspend the charter of any lodge for a refusal to obey the rules until the meeting of the grand lodge next following, but nowhere in the constitution or by-laws is the right given to the general secretary or any other officer to exercise by himself any power of that kind; and therefore we think that the lodge was not suspended, although it was in default in the payment of its dues.

But it is said that the subordinate lodge had withdrawn from the order, and had therefore lost the benefits of its membership. That defense was not set up in the answer, nor was any such fact found by the referee, and that would seem to dispose of the contention; but an examination of the testimony shows, moreover, that whatever action of the sort took place was taken at an informal meeting of the members of the lodge, and the conclusion was reached by them acting individually, and not as a lodge, and it appears affirmatively that no further action was taken by the lodge in that respect. The action of the several members of the lodge certainly could not operate as an act of the lodge itself to sever its connection with the grand lodge, and therefore this contention is also not well founded.

For these reasons, the conclusions of the referee were correct, and the judgment must be affirmed, with costs. All concur.