## EARLE v. EARLE.

(Supreme Court, Appellate Division, First Department. December 30, 1910.)

1. MARRIAGE (§ 3*)—VALIDITY—WHAT LAW GOVERNS.
> The law of the matrimonial domicile of the parties governs in an action to annul the marriage, regardless of where the marriage was solemnized; but, in the absence of a statute of the domicile regulating marriages abroad, the lex loci contractus governs as to the validity of the marriage, unless the marriage is odious by common consent of nations.
>
> [Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 3, 23; Dec. Dig. § 3.*]

2. MARRIAGE (§ 3*)—VALIDITY—WHAT LAW GOVERNS.
> A marriage in a foreign country of parties residing in New York, where one of the parties had a wife living and not divorced, is polygamous and void, within Domestic Relations Law (Consol. Laws, c. 14) § 6, and an action to annul the marriage is authorized by Code Civ. Proc. § 1743, subd. 2, and section 1745.
>
> [Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 3, 23; Dec. Dig. § 3.*]

3. MARRIAGE (§ 37*)—VOID MARRIAGE—RATIFICATION.
> A marriage, void under Domestic Relations Law (Consol. Laws, c. 14) § 6, because of a former existing marriage of one of the parties, cannot be ratified; and, after the dissolution of the former marriage by an effective decree of divorce, a ceremonial marriage, or writing signed by the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

parties and acknowledged and witnessed, is essential, under Laws 1901, c. 339, to create a new marriage contract.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 108; Dec. Dig. § 37.*]

4. MARRIAGE (§ 59*)—ANNULMENT—RIGHT TO SUE.

The fact that parties, married before a former marriage of the man had been dissolved by an effective decree of divorce, lived together after the decree became effective, is no bar to an action by the woman to annul the marriage.

[Ed. Note.—For other cases, see Marriage, Dec. Dig. § 59.*]

5. MARRIAGE (§ 61*)—ANNULMENT—STATUS OF CHILDREN.

Where a woman innocently and in good faith married a man who had been previously married, in reliance on his representation that he was divorced, when as a matter of fact the divorce had not become effective, the court, annulling the marriage at the suit of the woman, should legitimatize a child of the parties, so far as that may be done.

[Ed. Note.—For other cases, see Marriage, Dec. Dig. § 61.*]

Appeal from Special Term, New York County.

Action by Julia Kuttner Earle against Ferdinand Pinney Earle. From an order denying a motion for judgment for plaintiff on the report of a referee, she appeals. Reversed, and judgment directed for plaintiff.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Willard Parker Butler, for appellant.

LAUGHLIN, J. The action is brought to annul a marriage solemnized in due form between the parties in the city of Venice, Italy, on the 17th day of March, 1908. The report of the referee contains findings of fact and conclusions of law in the usual form of a decision of a reference to hear, try, and determine the issues. He finds that the marriage was invalid, owing to the fact that the defendant had a wife living at the time, from whom he was not divorced, and that the plaintiff was entitled to judgment annulling the marriage. The order of the court from which the appeal is taken leaves the action in a most unsatisfactory condition; for it is still pending, and, although the issues have been tried and decided by the referee, neither party has a judgment, and a new trial has not been granted.

It appears that the parties both resided in the state of New York at the time they contracted the marriage to annul which this action is brought, and that they have ever since remained such residents. On the 25th day of March, 1903, the defendant duly married Marie Emilie Fishbacher in the city of Paris, France, she being a resident of that city; but he thereafter abandoned her, and on the 12th day of February, 1908, the First Chamber of the Civil Tribunal of the Department of the Seine, at the suit of the wife, granted her a divorce from the defendant on the ground of desertion. According to the law of France, as declared by the Court of Cassation, which is the highest court in that country, this divorce did not be-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

come effective to sever the bonds of matrimony, or leave either party free to remarry, until the executory part of the decree was transcribed in the register of the "etat-civil" of the sixth arrondissement of Paris, where the marriage was recorded. It was the duty of the plaintiff in the divorce action there to serve upon and file with the mayor of the arrondissement where the marriage was celebrated a certified copy of the decree within two months after it became final, and on his failure to do so the defendant might have complied with the requirement; but until it was so served and filed, and the executory part thereof was so transcribed, the marriage remained in full force and effect, and neither party was at liberty to remarry.

The decree of divorce was not so served or filed or transcribed until the 10th day of May, 1908, after the marriage between the plaintiff and defendant, which was celebrated on the 17th day of March, 1908, at the American Consulate in the city of Venice, Italy, before the United States consul, by the Rev. Canon Lonsdale Ragg, who was authorized by the laws of Great Britain to perform such ceremony. The certificate of marriage was issued by the consul. By virtue of the provisions of section 4082 of the Revised Statutes of the United States,[1] this marriage had the same force and effect as if it had been solemnized in the United States, provided the parties would have been authorized to solemnize the marriage if they then resided in the District of Columbia. The referee in his opinion states that he is without knowledge as to whether this marriage would be recognized as legal under the Italian law, and that the law of Italy has not been shown. The memorandum written at Special Term on denying the motion to confirm the referee's report indicated that the motion was denied on the ground that the Italian law should have been shown.

We are of opinion that it is not material to inquire with respect to the law of Italy, for the reason that it may be assumed that the law of no civilized Christian nation permits polygamy, and if the law of Italy did permit the marriage between parties, one of whom was already married and the bonds of matrimony in full force, the courts of this state would not be obliged to give effect to such law as between parties domiciled here at the time of the celebration of the marriage. The general rule is that the law of the matrimonial domicile of the parties governs in actions for divorce—the same rule by analogy applies to an action for the annulment of a marriage—regardless of where the marriage was solemnized or where the offense, which is the ground upon which the divorce is predicated, was committed (Kinnier v. Kinnier, 45 N. Y. 535, 6 Am. Rep. 132; 1 Bishop on Marriage, Divorce and Separation, § 839; Story on Conflict of Laws, § 230a); but, in the absence of a statute of the state of the domicile of the parties expressly regulating marriages abroad, which it seems it is competent for the Legislature to enact as to persons domiciled within the state (Bishop, supra, §§ 866, 867, 873, 883, and 884), the lex loci contractus governs as to the validity of the marriage, unless the marriage be odious by common consent of nations, as where it is polygamous or incestuous by the laws of na-

[1] U. S. Comp. St. 1901, p. 2768.

ture (Bishop on Marriage, Divorce and Separation, §§ 305, 309, 310, 837, 838, 839, 951, 853, 856, 860, 861 and 867.; Story on Conflict of Laws, §§ 89, 113a, and 114; People v. Crawford, 62 Hun, 160, 16 N. Y. Supp. 575, affirmed 133 N. Y. 535, 30 N. E. 1148; Commonwealth v. Graham, 157 Mass. 73–75, 31 N. E. 706, 16 L. R. A. 578, 34 Am. St. Rep. 255).

This marriage, being polygamous if celebrated here, would have been void by virtue of the provisions of section 6 of the domestic relations law, and an action to annul it on the ground that it is void is expressly authorized. Code Civ. Proc. § 1743, subd. 2, and section 1745; Pettit v. Pettit, 105 App. Div. 312, 93 N. Y. Supp. 1001. The marriage, being odious by common consent of the nations, is not protected by the rules of international law, and does not come within the principle of the authorities holding that a marriage celebrated without the state by parties domiciled here with the intention of evading the operation of our statutes, under which it would be void, must, under the general rule to which reference has been made, be recognized as valid here. See Bishop on Marriage, Divorce and Separation, supra, §§ 843, 846, 869 and 880; Van Voorhis v. Brintnall, 86 N. Y. 18, 40 Am. Rep. 505; Thorp v. Thorp, 90 N. Y. 602, 43 Am. Rep. 189; Stevenson v. Gray, 17 B. Mon. (Ky.) 193; Medway v. Needham, 16 Mass. 157, 8 Am. Dec. 131. In Medway v. Needham, supra, effect was given in Massachusetts to a marriage celebrated in Connecticut by a couple, one of whom was black and the other white, who were domiciled in Massachusetts, the laws of which prohibited a marriage between them, and who went to Connecticut where the laws did not prohibit such a marriage, for the express purpose of marrying and with the intention of returning as they did.

The marriage was void, not voidable (section 6, Domestic Relations Law [Consol. Laws, c. 14]; Pettit v. Pettit, supra), and therefore it could not be ratified. Moreover, there is no evidence that any new marriage ceremony took place between the parties after the divorce between the defendant and his former wife became effective, and since under the law a ceremonial marriage, or a writing signed by the parties and duly acknowledged and witnessed, was essential to a new marriage contract (chapter 339, Laws 1901), the fact that the parties lived together after it was competent for them to contract a legal marriage is no bar to this action. Although the marriage between the parties was void without any decree of a court, yet the importance to society of having such questions judicially determined, and not left to depend upon proof of material facts at a time when it might be difficult to make such proof, has induced the Legislature to authorize a decree of annulment in such cases. Code Civ. Proc. § 1743, subd. 2; Id., § 1745.

It appears that the plaintiff was innocent, and that it was represented to her that the defendant was duly divorced from his former wife, and she in good faith believed he was at liberty to marry her. In these circumstances the issue of the marriage, one child, should be deemed the legitimate issue of the mother. Although the statutory provisions, if construed literally, do not seem to extend to a case where the innocent

party knew that there was a former marriage, and that the former husband or wife was living, and relied on the validity of a divorce, yet I think the case falls within the spirit of the statute, and the decree should legitimatize the child, so far as that may be done. The plaintiff testified that she did not cohabit with the defendant after ,she learned that his divorce had not become effective at the time they were married, and therefore there is no reason for withholding the relief for which she prays, and which the court is authorized to grant. All of the material findings made by the referee are sustained by the evidence, and they warrant the legal conclusions made by him.

It follows, therefore, that the order appealed from should be reversed, with $10 costs and disbursements, and the motion to confirm the referee's report should be granted, with $10 costs, and judgment directed for the plaintiff, with costs. All concur.