(79 Misc. Rep. 74.)

## In re KUTTER'S ESTATE.

(Surrogates' Court, New York County.   January, 1913.)

1. MARRIAGE (§ 54*)—REMARRIAGE WHILE OTHER SPOUSE LIVING—VALIDITY.
   Under Domestic Relations Law (Consol. Laws 1909, c. 14) § 6, a second marriage in New York in good faith of a person whose spouse has been absent for five successive years without being known to be living subsists until death or an adjudication avoiding it, though the disappearing spouse reappear; and the validity of such second marriage cannot be questioned collaterally.
   [Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 93–103, 105, 106, 109; Dec. Dig. § 54.*]

2. MARRIAGE (§ 54*)—REMARRIAGE WHILE OTHER SPOUSE LIVING.
   At common law, the remarriage of a person having a husband or wife actually living, although unheard of for years and believed to be dead, was void from the beginning.
   [Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 93–103, 105, 106, 109; Dec. Dig. § 54.*]

3. MARRIAGE (§ 3*)—REMARRIAGE WHILE OTHER SPOUSE LIVING—WHAT LAW GOVERNS.
   On an application to revoke letters of administration granted to intestate's widow, because her marriage to intestate which occurred in New Jersey was invalid, the validity of the marriage must be determined by the law of New Jersey.
   [Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 3, 23; Dec. Dig. § 3.*]

4. EVIDENCE (§ 80*)—LAWS OF ANOTHER STATE—PRESUMPTION.
   Where, in such case, there was no proof of any New Jersey statute altering the common-law rule that remarriage of one having a husband or wife actually living is in all cases void from the beginning, the presumption was that such rule was in force in New Jersey; and hence the marriage must be held invalid and the letters revoked.
   [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 101; Dec. Dig. § 80.*]

Application to revoke letters of administration on the estate of Howard Kutter, deceased, issued to his widow. Letters revoked.

Howard S. Kinney, of New York City (James B. Fox, of counsel), for applicant.

John F. Valieant, of New York City, opposed.

FOWLER, S.   This is an application under subdivision 4, § 2685, Code of Civil Procedure, to revoke letters of administration obtained by an alleged false suggestion. The administratrix received the letters of administration as widow of Howard Kutter, deceased. She alleged and now insists that she is such widow. This is denied by the mother of the deceased, who petitions to revoke the letters. The issues of fact came on for hearing before me. It was then established that the administratrix was married to one Horton in May, 1900. In or about the year 1901 Horton disappeared, and was not known to administratrix to be living in November, 1908. In 1905 the administratrix entertained the idea of divorcing Mr. Horton, but could not find him. Not hearing from Horton in more than seven years, the admin-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

istratrix married the deceased Mr. Kutter in November, 1908, in the state of New Jersey. At that time the precise domicile of the deceased and the administratrix is not very clear, but the evidence points to New Jersey. In May, 1910, Mr. Horton reappeared at the home of Mrs. Kutter in the city of New York, and Mr. Kutter then saw him, and sent him away with the statement to Horton, in effect, that the administratrix was now Mrs. Kutter. Mr. Horton seems to have acquiesced in this statement so far as to disappear again without contradiction. The only question before me is the effect of her marriage to deceased on the title of the administratrix to the letters of administration. Is she or is she not the widow of the deceased Mr. Kutter, so as to entitle her to letters of administration?

[1] Had the marriage of administratrix to the deceased taken place in the state of New York, the question here would be very different. Under the law of this state the remarriage of a person whose husband or wife has absented himself or herself for five successive years then last past without being known to such person to be living during that time is not void, but voidable (2 R. S. p. 139, §.6;. section 6, Domestic Relations Law, c. 19, Laws of 1909 [Consol. Laws 1909, c. 14], formerly section 3, c. 272, Laws of 1896), and such a second marriage subsists until death or an adjudication avoiding it, and this is so even if it transpires that the disappearing spouse of the prior marriage reappear. (Stokes v. Stokes, 198 N. Y. 301, 305, 91 N. E. 793), unless there is bad faith apparent in the new marriage (Gall v. Gall, 114 N. Y. 109, 21 N. E. 106; Jones v. Zoller, 29 Hun, 551). In the absence of bad faith, the validity of such a second marriage cannot be questioned collaterally (Cropsey v. McKinney, 30 Barb. 48; Matter of McKinley, 66 Misc. Rep. 126, 122 N. Y. Supp. 807; Taylor v. Taylor, 25 Misc. Rep. 566, 55 N. Y. Supp. 1052; Griffin v. Banks, 24 How. Prac. 213, reversed on other grounds 37 N. Y. 621), and after the death of the disappearing spouse of the former marriage it would seem not at all (Combs v. Combs, 17 Abb. N. C. 265; Stokes v. Stokes, 198 N. Y. 301, 304, 91 N. E. 793). But this condition of the matrimonial law is the effect of the statutes of this state.

[2] At common law the remarriage of one having a husband or wife actually living, although unheard of for years and believed to be dead, was void ab initio (Fenton v. Reed, 4 Johns. 52, 53, 4 Am. Dec. 244; Williamson v. Parisien, 1 Johns. Ch. 389, 393; Price v. Price, 124 N. Y. 589, 596, 27 N. E. 383, 12 L. R. A. 359), as the old statutes relieving him or her from the penalties for bigamy did not validate the subsequent marriage contract, even if contracted under an honest mistake of fact (Fenton v. Reed, supra; Price v. Price, supra; Schouler, Domestic Relations, § 21).

[3] But the marriage of the administratrix to the intestate Kutter did not take place in this state. It took place in New Jersey. Its validity is to be determined there by the law of the state of New Jersey. Van Voorhis v. Brintnall, 86 N. Y. 18, 40 Am. Rep. 505. In this respect locus regit actum, and, if valid in New Jersey, the marriage is valid everywhere. Story, Conflict of Laws, §§ 85, 89, 103; Wheat-

on, 141; Hynes v. Hynes, 91 N. Y. 451, 457, 43 Am. Rep. 677.  If
not valid there, it is not valid here.

[4] Now, the common law is presumed to be in force in New Jer-
sey, and the statutes of this state have, of course, no extraterritorial
effect there.  No proof has been made before me of any statute of
New Jersey altering the common law, and the surrogate cannot take
judicial notice of the statutes of New Jersey.  The presumption is
that the common law prevails in New Jersey, when no statute altering
it is proved as a fact.  Vanderpoel v. Gorman, 140 N. Y. 563, 568,
35 N. E. 932, 24 L. R. A. 548, 37 Am. St. Rep. 601; First Nat. Bank
v. Nat. Broadway Bank, 156 N. Y. 459, 472, 51 N. E. 398, 42 L. R.
A. 139; Robb v. Washington & Jefferson College, 185 N. Y. 485,
496, 78 N. E. 359; Monroe v. Douglass, 5 N. Y. 447; Electro Co. v.
Amer. H. Co., 130 App. Div. 561, 115 N. Y. Supp. 34.

At common law the marriage of the administratrix to Kutter was
absolutely void, if she then had a husband living.  The proofs show
that she then had a husband living.  This being so, there is no es-
cape from the conclusion that the present administratrix of intestate
is not and was not the widow of the intestate Kutter at the time she
applied for letters of administration upon his estate.  The suggestion
by which the administratrix obtained such letters was therefore false
when made.  Kerr v. Kerr, 41 N. Y. 272.

This being so, the letters in question must be revoked.  Decree ac-
cordingly.