In the Matter of the Estate of GEORGE SANDERS, Deceased.

Surrogate's Court, Clinton County, February 1, 1928.

Surrogate's Court — jurisdiction — Surrogate's Court has jurisdiction in proceeding to revoke letters of administration, under Surrogate's Court Act, § 99, subd. 4, to declare marriage void or voidable — executors and administrators — revocation of letters — claim is made that administratrix stated in petition she was decedent's widow, whereas first husband is still living — evidence fails to indicate that widow knew her first husband was living at time of marriage to decedent — Domestic Relations Law, § 6, subd. 3, applied — marriage between parties was voidable — petition dismissed — administratrix is entitled to dower — costs allowed, pursuant to Surrogate's Court Act, § 278.

The Surrogate's Court has jurisdiction in a proceeding, under subdivision 4 of section 99 of the Surrogate's Court Act, to revoke letters of administration, to declare the marriage between decedent and his widow, to whom letters were issued, void or voidable.

This is a proceeding for revocation of letters of administration issued to decedent's widow, on the ground that said letters were issued by reason of the false suggestion of a material fact in the petition, in that she was the widow of decedent, whereas her first husband is still living and her marriage to him is in full force and effect. Since there is no evidence to indicate that the widow knew her

Misc. 266]     Surrogate's Court, Clinton County, February, 1928.

first husband was living at the time of her marriage to decedent, and there is evidence to show that her first husband had been absent for five successive years last past without being known to her to be living during that time, as provided by subdivision 3 of section 6 of the Domestic Relations Law, the marriage between decedent and the administratrix was voidable rather than void, and the petition, therefore, to revoke the letters of administration issued to her, should be dismissed and dower in decedent's real estate allowed to her. She is entitled to costs, pursuant to section 278 of the Surrogate's Court Act, payable *pro rata* from the petitioners' interest in decedent's estate.

PROCEEDING for the revocation of letters of administration.

*Horatio W. Thomas,* for Charles H. Sanders, Eugene Sanders and others, petitioners.

*Booth & Booth* [*Robert C. Booth* of counsel], for Mina J. Sanders, the administratrix.

HARRINGTON, S.   This is a proceeding for the revocation of letters of administration upon the ground that such letters were issued by reason of a false suggestion of a material fact in the petition for such letters, namely, that the petitioner was the widow of the decedent.   The petitioners herein are the brothers of the decedent.   The petitioners allege that the administratrix herein is not the widow of the decedent for the reason that her first husband is still living and that her marriage to him is in full force and effect.

The evidence shows that the administratrix herein, Mina J. Sanders, and one James Blanchard were married at Au Sable Forks, N. Y., on or about April 7, 1880.   They lived together as husband and wife for about three years and had one child, Fred Blanchard, who is still living.   About 1883 Blanchard deserted his wife and child and went to the State of Vermont.   From the time he left, he never in any way communicated with his wife or child or contributed to their support.   About 1890, seven years after Blanchard had deserted her, Mrs. Sanders received a newspaper from Rutland, Vt., containing an account of the death of one James Blanchard, formerly of Au Sable Forks, N. Y.   It appears that this newspaper was sent to Mrs. Sanders by her aunt who was then living in the vicinity of Rutland.   Mrs. Sanders discussed this account of the death of Blanchard with his father and mother.   Both of them on several occasions advised her that they believed that Blanchard was dead.   Mrs. Sanders also discussed the matter with several people in the locality of Au Sable Forks and with members of her own family.   They all expressed a belief that Blanchard was dead.   She also consulted a lawyer at Au Sable Forks in regard to the matter, and inquired whether under the circumstances she had a right to remarry without getting

a divorce from Blanchard. The lawyer advised her that under the circumstances she had a right to remarry without taking any legal proceedings. Believing that she had a right to remarry, Mrs. Sanders married one Mr. Joy in 1898 and lived with him until he died in 1919. During most of this time they lived at Au Sable Forks, N. Y. On November 13, 1920, Mrs. Sanders married George A. Sanders, the above-named decedent, and lived with him near the vicinity of Au Sable Forks, N. Y., for nearly six years, until his death on January 13, 1926. There is no evidence that from the time Blanchard deserted her, Mrs. Sanders was ever advised that he was still living. During the summer before she married Mr. Sanders, Mr. Edward Blanchard, brother of James Blanchard, who had been living for many years at Barre, Vt., came to Clintonville, near Au Sable Forks, N. Y., and advised Mrs. Sanders upon inquiry, that his brother, James Blanchard, was dead. He also advised two other witnesses to the same effect. The only proof offered by the petitioners to show that James Blanchard is still living was given by a witness who was taken to Rutland, Vt., by the petitioners herein, a short time before this proceeding was begun, for the purpose of identifying Blanchard as being the former husband of Mrs. Sanders.

To pass upon the matter in question will necessitate a determination by this court of whether or not the marriage of Mina J. Sanders to George A. Sanders is void or voidable. If void, then she was not entitled to be appointed administratrix of the decedent's estate and her statement in her petition for letters of administration, that she was the decedent's widow, constitutes a false suggestion of a material fact sufficient to authorize this court to revoke such letters, pursuant to section 99, subdivision 4, Surrogate's Court Act. If her marriage to George Sanders was not void but voidable, then such marriage is valid for all purposes, until annulled by a court of competent jurisdiction. (Dom. Rel. Law, § 7; Civ. Prac. Act, § 1134; *Stokes* v. *Stokes*, 198 N. Y. 301, 305; *Gall* v. *Gall*, 114 id. 109, 120; *Camp* v. *Penn. R. R. Co.*, 201 App. Div. 78, 86; *Matter of Kutler*, 79 Misc. 74, 75; *Matter of Del Genovese*, 56 id. 418, 420.)

Counsel for the administratrix urges that while this court may have the power in this proceeding to declare such later marriage voidable, it does not have the power to declare such marriage void, as to do so would in effect constitute an annulment of such marriage, and that this can be done only in an action for that purpose, pursuant to section 1134 of the Civil Practice Act. Whether, if this court should declare this marriage void, the matter would be held to be *res adjudicata* in a proceeding brought

to annul the marriage, need not be passed upon at this time.   The issue in this proceeding is whether the administratrix is the decedent's widow and it would seem illogical to state that this court has power to declare that she is the widow of the decedent, but that it has no power to declare that she is not the widow of the decedent.   I believe this court has ample authority in this proceeding to declare such marriage either void or voidable, dependent only upon the evidence adduced. (Surrogate's Court Act, § 99, subd. 4; *Kerr* v. *Kerr*, 41 N. Y. 272, 276; *Matter of Tyrrell*, 115 Misc. 714; affd., without opinion, 198 App. Div. 1001; *Matter of Wright*, 110 Misc. 480.)

Was the marriage of Mina J. Sanders with George A. Sanders void or voidable?   Since March 25, 1922, such a marriage would be absolutely void unless Mrs. Sanders' prior marriage with Mr. Blanchard had been dissolved pursuant to section 7-a of the Domestic Relations Law. (Dom. Rel. Law, § 6, subd. 3, as amd. by Laws of 1922, chap. 279, in effect March 25, 1922.)   It has been held, however, that this amendment is not retroactive, and that marriages contracted prior to its enactment, where one of the parties had a husband or wife living, are controlled by said section 6, subdivision 3, as it then existed. (*Atkinson* v. *Atkinson*, 207 App. Div. 660.)   At the time of the marriage of Mrs. Sanders and Mr. Sanders, section 6, subdivision 3, of the Domestic Relations Law read as follows:

" § 6. Void marriages.   A marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless   *   *   *

" 3. Such former husband or wife has absented himself or herself for five successive years then last past without being known to such person to be living during that time."

Also, at the time of the marriage of Mr. and Mrs. Sanders, section 7, subdivision 5, of the Domestic Relations Law read as follows:

" § 7. Voidable marriages.   A marriage is void from the time its nullity is declared by a court of competent jurisdiction if either party thereto   *   *   *

" 5. Has a husband or wife by a former marriage living, and such former husband or wife has absented himself or herself for five successive years then last past without being known to such party to be living during that time."

Accordingly, it would seem clear that in any event the marriage of Mr. and Mrs. Sanders was voidable prior to Mr. Sanders' death, and that an action to declare its nullity could have been maintained either by Mr. or Mrs. Sanders or by Mr. Blanchard.

Counsel for the petitioners, however, urges that the marriage of Mr. and Mrs. Sanders was void on the ground that she did know, or should have known at the time of her marriage with Mr. Sanders, that her former husband, Mr. Blanchard, was then living. Mrs. Sanders testified that she did not know that Mr. Blanchard was living at the time of her marriage with Mr. Sanders. There is no evidence to indicate that she did know that Blanchard was living at the time of her marriage to Mr. Sanders. Whether she should have known this fact, depends upon the nature and extent of the investigation required to be made by her before it can be said, within the language of section 6, subdivision 3, of the Domestic Relations Law, that she had no knowledge of the existence or whereabouts of Mr. Blanchard prior to her marriage to Mr. Sanders. The following cases have interpreted the meaning of the phrase, " without being known to such person to be living during that time," as used in section 6, subdivision 3, of the Domestic Relations Law, defining void marriages: *Stokes* v. *Stokes* (*supra*, 305): " The marriage between the parties to this action was either void or voidable, for the first husband of the defendant was living and undivorced when it was contracted. If she knew, or should have known the fact at that time, it was absolutely void with no binding force upon either party and their relations were not sanctioned by law, whether they realized it or not. If she did not then know it within the true meaning of the statute and she married the second time in the full belief, after due observance of the five years' provision, that her first husband was dead, the marriage was not void but voidable, binding upon both parties thereto until action by the court, and their relation was that of honorable marriage, with no stain on the good name of either and no blight on the status of any child they might have. * * * " At page 308: " * * * knowledge within the true meaning of the statute involves all that a person of ordinary prudence would have discovered under like circumstances by an inquiry conducted in good faith with the diligence required by the importance of the subject. The inquiry must be made with an honest effort to find out the truth, not to overlook it so as to be able to testify that nothing was discovered. A careless or dishonest inquiry affords no protection."

*Gall* v. *Gall* (*supra*, 120, 121): " He decides the question as to his right to remarry for himself, without application to any court or public authority. The whole responsibility rests upon him. He cannot shut his eyes and ears and justify a second marriage because for five years he did not hear of his wife. Did he try to hear of her? Did he honestly believe she was dead? Did he

Misc. 266]     Surrogate's Court, Clinton County, February, 1928.

make inquiry?   Were the circumstances such that a reasonable man, honestly desiring to learn the truth, would have made inquiry?   Was he excused from inquiring by a false report of her death?   Questions of this character are involved in the ultimate question of good faith, which is necessarily for the jury, as it depends upon the inferences to be drawn from a great many circumstances."

*Circus* v. *Independent Order Ahawas* (55 App. Div. 534, 536): " The person desiring to avail herself of this statute is required to act in good faith and use all such means to obtain information with respect to the absent spouse as reasonable persons would do under the circumstances. (*Gall* v. *Gall*, 114 N. Y. 109.)   She cannot shut her eyes and ears and make no effort to ascertain the facts, and then, because she knows nothing, marry at the end of the five years relying merely upon the absence of the other person. So the question is whether in this case the plaintiff did what a reasonable person would do under the circumstances to ascertain the whereabouts or the existence of Brenner after he had left her. In such cases one is called upon only to make use of the opportunities which she has to get information, and if she fairly makes use of those opportunities and obtains no information, she is entitled to act upon the presumption which the statute creates."

I am satisfied from the evidence herein that in view of the test to be applied as to the thoroughness of the investigation to be made in such a case, as set forth in the above-mentioned cases, Mrs. Sanders did all that was required of her by the statute in order that it may be said that at the time she married Mr. Sanders she had no knowledge that Mr. Blanchard was then living.   I believe that she did what a reasonable person would do under like circumstances to ascertain the whereabouts or the existence of Mr. Blanchard, prior to her marriage with Mr. Sanders.   The evidence strongly indicates that her inquiry was conducted in good faith and with an honest effort to find out the truth.   She was an ordinary person in a small hamlet and she did all that a person of her financial ability and social standing would do to secure the information desired.   Surely the father, mother and brother of Blanchard would be the first ones to whom any one would address an inquiry as to the existence or whereabouts of James Blanchard.   They all advised Mrs. Sanders that they believed James Blanchard was dead.   Mrs. Sanders then inquired of various persons in her locality who might reasonably be expected to have some information regarding the matter, and they advised her that they believed James Blanchard was dead.   She also inquired in regard to her right to remarry from an elderly lawyer

in the locality where she lived. This lawyer assured her of her right to remarry without any legal proceedings. In any case like the present one, it will probably be easy to suggest various matters that might have been done that would have tended more strongly to establish the correctness of the belief that the absentee husband was dead. However, the test is whether the investigation as made was such as a reasonable person would make under the circumstances. If this has been done, the requirements of the statute have been met. I, therefore, hold that the marriage of Mr. and Mrs. Sanders was voidable and not void. (*Circus* v. *Independent Order Ahawas, supra; Matter of Del Genovese, supra.*)

It follows that the petition herein should be dismissed and the administratrix be allowed dower in the decedent's real estate and the statutory exemptions for the benefit of a widow. (*Matter of McKinley,* 66 Misc. 126.) Costs in this proceeding to be allowed the administratrix pursuant to section 278 of the Surrogate's Court Act, and to be payable *pro rata* from the interests of the petitioners herein, in decedent's estate. Costs to be taxed and decree to be entered on two days' notice to either party.