In the Matter of the Accounting of BRIDGET REID, as Administratrix of the Estate of ANNA McNELL, Deceased.

Surrogate's Court, Kings County, September 19, 1946.

*David C. Lewis* for petitioner.

*John E. Gruning* for Marie Carver, as committee of Charles W. Muller, an incompetent, respondent.

*Nathaniel L. Goldstein, Attorney-General (Louis E. Cooper* of counsel), for Kings Park State Hospital.

McGAREY, S. The issue presented for determination in this proceeding is whether the respondent's ward, an incompetent war veteran, was the husband of decedent and as such entitled to a distributive share in her estate. A hearing was had on that issue and the court rendered its decision (N. Y. L. J., June 3, 1943, p. 2171, col. 6), wherein it held that a ceremonial marriage in 1917 between decedent and respondent's ward was voidable

and not void and that, upon all the evidence adduced, the respondent's ward was the husband of decedent and entitled to a distributive share in her estate.

No decree was ever submitted or entered on that decision and the petitioner-accountant moved for a new trial on the ground of newly discovered evidence. The motion was granted to permit not only the introduction of the alleged newly discovered evidence but any other evidence which either of the parties desired to offer. The order entered on such decision was affirmed on appeal (*Matter of McNell,* 270 App. Div. 857). The additional proof having been heard by the court, the determination herein is based on all the evidence on both hearings.

It is not necessary to review in detail the evidence presented at the first hearing as it was amply stated in the prior decision. Some comment thereon, however, is necessary since the motion for a new trial was predicated, principally, upon the finding that, although petitioner had established that decedent had married John C. McNell, in a religious ceremony, on April 14, 1907, and that McNell was living in 1917 when decedent went through a ceremonial marriage with respondent's ward, she had failed to sustain the burden of proving, in addition thereto, under the law as it then existed, " that John McNell had not absented himself for five successive years immediately prior to the second ceremonial marriage, or to prove affirmatively that during such absence he was known to decedent to be living, and that the McNell marriage had not been terminated by annulment or divorce prior to the second marriage."

The additional proof presented at second hearing establishes to the satisfaction of the court that if decedent had made reasonable inquiry or diligent search, she would have ascertained that her first husband was living at the time of her marriage to the respondent's ward and, therefore, was not entitled to the protection or benefit of subdivision 3 of section 6 of the Domestic Relations Law. The proof does not establish, however, that she actually knew that he was alive. Even if she knew he was alive, she might have been justified in assuming that he had obtained an annulment or dissolution of the marriage by reason of his apparent marital relations with Della. This, however, would not render her marriage to respondent's ward voidable: It is merely mentioned on the question of the good faith with which the marital relationship with respondent's ward commenced.

The institution by decedent of the separation action and the settlement of that action, all followed the commencement of a partition action involving property owned by the McNell family.

This occurred subsequent to the ceremonial marriage to respondent's ward, but does not establish actual knowledge by her of McNell's existence at the time of such marriage. The commencement of the partition action undoubtedly brought to decedent's attention the possible right she, as McNell's wife, had in the real estate in question. The probate of John McNell's will in 1920 establishes the fact that the first marriage had not been terminated by annulment or divorce at the time of the marriage to respondent's ward. The decedent was a party to such probate proceeding, and therefore knew of the actual death of McNell in 1920 and the removal by such death of any impediment to a continued marital relationship with the respondent's ward.

For some time prior to and at the time of the second ceremonial marriage in 1917 and until subdivision 3 of section 6 of the Domestic Relations Law was amended by chapter 279 of the Laws of 1922, a marriage, contracted by one whose former spouse " has absented himself or herself for five successive years then last past without being known to such party to be living during that time " was voidable, not void. Sections 6 and 7 of the Domestic Relations Law, until the enactment of the aforesaid amendment, were based on the probability that the absentee spouse was dead and served to protect the one who marries another in good faith, from the evil results attendant if the absentee were still living. Where such second marriage was contracted in good faith, the subsequent reappearance by the absentee did not, per se, invalidate the second marriage which, by the words of the statute, became void only from the time it was so declared by a court of competent jurisdiction. In the absence of bad faith, the validity of such second marriage could not be questioned collaterally, and after the death of the absent spouse, it would seem not at all. In other words, in the absence of bad faith, the first marriage is suspended or held in abeyance, and the second marriage subsists until death or an adjudication avoiding it (*Stokes* v. *Stokes,* 198 N. Y. 301, 305; *Gall* v. *Gall,* 114 N. Y. 109, 120; *Jones* v. *Zoller,* 29 Hun 551; *Matter of Sanders,* 131 Misc. 266, 268; *Matter of Kutter,* 79 Misc. 74, 75; *Matter of Del Genovese,* 56 Misc. 418, 419–420, affd. 136 App. Div. 894).

The court held on the basis of the evidence in the first hearing that the second marriage was voidable, and not void, and that since neither decedent nor respondent's ward nor John McNell instituted an action to declare the second marriage a nullity, such marriage subsisted until decedent's death and the respondent's ward was the lawful spouse of the decedent.

The statutes in question, namely sections 6 and 7 of the Domestic Relations Law, as they read at the time of the 1917 ceremonial marriage, served to protect the remarrying spouse only if he or she acted in good faith. In the absence of good faith, such second marriage was void and no decree was necessary to declare such a marriage a nullity.

The courts have held that the knowledge required by these statutes involves " all that a person of ordinary prudence would have discovered under like circumstances by an inquiry conducted in good faith with the diligence required by the importance of the subject. The inquiry must be made with an honest effort to find out the truth, not to overlook it so as to be able to testify that nothing was discovered. A careless or dishonest inquiry affords no protection." (*Stokes* v. *Stokes, supra,* p. 308. See, also, *Matter of Sanders,* 131 Misc. 266, 270–271, *supra,* citing and quoting *Stokes* v. *Stokes, supra, Gall* v. *Gall, supra,* and *Circus* v. *Independent Order Ahawas,* 55 App. Div. 534.) Knowledge under the former statute meant something more than a passive acceptance of abandonment without inquiry. (*Dodge* v. *Campbell,* 135 Misc. 644, 649, affd. 229 App. Div. 534, affd. 255 N. Y. 622. See, also, *Matter of Klimenko,* 166 Misc. 148, 152–153, affd. 254 App. Div. 732.)

The petitioner was not required to prove that the decedent had *actual* knowledge that her former spouse was living at the time she contracted the second marriage. If the decedent knew *or should have known* the fact at that time, her later marriage was " absolutely void with no binding force upon either party and their relations were not sanctioned by law, whether they realized it or not " (*Stokes* v. *Stokes, supra,* p. 305). And to repeat, " Questions of this character are involved in the ultimate question of good faith, which is necessarily for the jury," and in absence of a jury, by the court " as it depends upon the inferences to be drawn from a great many circumstances " (*Gall* v. *Gall, supra,* p. 121).

The court is satisfied that the decedent, if she did not know of John McNell's existence during the five years prior to and at the time she remarried, could have known that fact if she had conducted an investigation such as a reasonable person would make under the circumstances.

The court, therefore, holds that while it has not been shown that decedent actually knew at the time of her later marriage that her former spouse was living, the evidence is sufficient to establish that she failed to make the investigation required by the statute under which she sought protection in contracting

her second marriage. The second ceremonial marriage was, therefore, void, and not voidable.

After such impediment was removed by the death óf John McNell in July, 1920, did a nonceremonial marriage take place between decedent and respondent's ward?

There is no proof that prior to the ceremonial marriage in 1917 there was any meretricious relationship between the decedent and respondent's ward. While there is proof that decedent knew of the death of her former spouse, the evidence is bare of any proof, or even suggestion, that the respondent's ward ever knew of the former marriage or the fact that one John C. McNell had died.

The court is satisfied on the facts that upon the removal of the impediment, respondent's ward and the decedent became husband and wife by virtue of a nonceremonial marriage or, as it is generally termed, a common-law marriage.

While the court has determined that the second ceremonial marriage was void, and not voidable, by reason of decedent's failure to make the investigation which the then existing statutes required, it does not necessarily follow, nor does this court intend to convey the thought that her failure to make the required inquiry made the relationship started under the second ceremonial marriage a meretricious one in the sense that the relation between decedent and respondent's ward was known to them to be immoral and unlawful. Nor does the court intend to infer by its reference to the separation suit commenced by the decedent subsequent to said ceremonial marriage that there was absent on decedent's part at the time she ceremonially married respondent's ward the good faith so often referred to by the courts as distinguishing a relationship illegal because in violation of former subdivision 3 of section 6 of the Domestic Relations Law, from a meretricious one.

The decedent and respondent's ward from the inception of their ceremonial marriage, with the exception of the period of his services in the armed forces, continued to live together as man and wife until she was committed to the mental institution, a period of twenty-three years, twenty of which followed the death of decedent's first husband. In this connection, the following language in *Matter of Haffner* (254 N. Y. 238, 241–242) is pertinent: " Nothing in the record discloses their state of mind when they entered into the ceremonial marriage except the fact that they voluntarily entered into the solemn obligations of the marriage relation under the form of a valid ceremonial marriage. Whether deceased believed that her first

husband, who had run away with another woman and left her in New York, was dead, or whether she supposed that his conduct and the lapse of time had released her from that marriage, we do not know. Neither do we know whether the parties believed that the commencement of the divorce action by respondent's first wife in Germany had resulted in freeing him from that marriage.

" We do know that the parties undertook by a formal ceremonial marriage to enter the legal relation of a man and wife. True, their relation in the eyes of the law was illegal in violation of section 6 of the Domestic Relations Law (Cons. Laws, ch. 14), but it was not intended by the parties to be ' meretricious in the sense that it was known to the parties to be immoral and unlawful, even if, as a matter of law, it was illegal and void.' (*Matter of Crandall,* 214 App. Div. 363.) "

Petitioner contends, as did the appellant in the *Haffner* case (*supra*), that the ceremonial marriage was void, that the relation of the parties was illicit and immoral and that such relation must be presumed to have continued in the absence of a new contract *in præsenti,* by which the parties agreed to become husband and wife by a common-law marriage after the obstacles to a legal marriage were removed. The court agrees that the ceremonial marriage was illegal and void. However, it does not agree with the remaining portion of the contention, but holds on the facts, that a nonceremonial marriage took place at the very moment when the decedent and respondent's ward were legally competent to enter into that relation (*Matter of Haffner, supra*).

Mindful of the fact that respondent's ward has not been charged with actual knowledge or even presumed to have had knowledge of decedent's former marriage or when the death of the former spouse took place, the following statement by Presiding Justice McLENNAN in *Matter of Wells* (123 App. Div. 79, 85–86, affd. 194 N. Y. 548) wherein the second marriage was ceremonial, clearly distinguishes between a situation when one person is free to enter into a matrimonial relationship, and does so in good faith, but the other party cannot enter into such relation because of a legal impediment, as in the case at bar, and where both parties enter into a relationship with full knowledge of all of the facts and also of the fact that by reason of an impediment they were legally incompetent to enter into a contract of marriage, ceremonial or nonceremonial: " It seems to me, in view of the decisions and authorities which have been referred to, that the rule ought to be that where one person is

free to enter into the matrimonial relation, and does so in good faith, but the other party is incapable of entering into such relation because of a former wife or husband living, or other impediment, when such impediment is removed, if the parties continue matrimonial cohabitation, continue to introduce and recognize each other as husband and wife, and are so recognized by their relatives, friends and by society, it ought to be held that from such moment they are actually husband and wife, and that under such circumstances it is of no importance that a formal agreement to live together as husband and wife was not entered into or that either did not know that the impediment to such an agreement had been removed, when in fact it had been so removed and both parties were competent to enter into the matrimonial state * * *.''

In *Matter of Schmidt* (42 Misc. 463) Surrogate CHURCH applied the presumption that continued cohabitation of parties to a void ceremonial marriage subsequent to the removal of the impediment established a common-law marriage, and distinguished cases where the relations of the parties were improper and illicit at their inception. Petitioner cites *O'Gara* v. *Eisenlohr* (38 N. Y. 296) as supporting a view contrary to the rules in the *Wells* case (*supra*) and other similar decisions. This is not so. As pointed out by Surrogate CHURCH, the *O'Gara* case did not touch upon the subject under consideration, for the first wife was shown to be alive after the second ceremonial marriage and there was no proof of her death, even though she had not been heard from. Furthermore, there was some testimony that she had been reported as alive even after the decedent's death. The sole question was whether an inference of the death of the first wife could be deduced from the evidence and a presumption of a new nonceremonial marriage after such death could be indulged. The court held that neither the inference could be deduced nor the presumption indulged.

The difficulty with petitioner's position is that she assumes a situation to exist here, not warranted by the proof, that both parties knowingly and intentionally entered into meretricious relations, such as existed in *Matter of Hill* v. *Vrooman* (242 N. Y. 549, affg. 215 App. Div. 847). Concededly, in such a situation, '' there arises a natural supposition that, having in the first instance cast aside the usual conventions of society, their attitude in respect thereto will probably continue to be the same unless or until a distinct and unequivocal demonstration of altered attitude is made to appear.'' (*Matter of Cherney*, 162 Misc. 764, 767.) The distinction between the two factual sit-

uations — meretricious as opposed to a marital relation entered into in good faith — was aptly drawn by Mr. Justice MADDOX in *Townsend* v. *Van Buskirk* (33 Misc. 287) and followed by the courts up and subsequent to the *Haffner* decision (254 N. Y. 238, *supra*).

*Matter of Hill* v. *Vrooman* (*supra*) is not applicable because it did not involve a second ceremonial marriage, even though void, and the basis for the *Hill* decision is well stated by Mr. Justice CUFF in *Cavanaugh* v. *Valentine* (181 Misc. 48, 57) where he said: " But that decision was based upon the fact that the couple when they started cohabiting, and for a long period, knew that they were incompetent to contract any kind of marriage. Every semblance of good faith was lacking. The removing of the impediment of the outstanding spouse by death was ineffectual to validate their marriage although they continued to live together as man and wife as they had done before the death, because they performed no ' affirmative act or declaration or any ceremonial marriage.' "

Where the parties enter into illicit relations, each knowing that they were incompetent to contract marriage by reason of an existing disability on the part of either or both, even a ceremonial marriage between the parties serving as a starting point for the commencement of their immoral relations will not bring into operation, upon removal of the impediment, the rule in the *Haffner* case (*supra*). (*Matter of Klimenko,* 166 Misc. 148, *supra.*)

There is no conflict in principle between the result reached here on the basis of *Matter of Haffner* (*supra*) and other cases above cited, and the ruling by Mr. Justice WALTER in *Taegen* v. *Taegen* (61 N. Y. S. 2d 869) and the cases cited by him, namely, *Collins* v. *Collins* (80 N. Y. 1), *Matter of Hill* v. *Vrooman* (242 N. Y. 549, *supra*), *Smith* v. *Smith* (194 App. Div. 543), *Pettit* v. *Pettit* (105 App. Div. 312), *Earle* v. *Earle* (141 App. Div. 611) and *McCullen* v. *McCullen* (162 App. Div. 599), in addition to cases from other jurisdictions.

In each case where there is a void ceremonial marriage entered into in good faith, there must necessarily be a new marriage contracted after the removal of the impediment, ceremonial or nonceremonial. A nonceremonial marriage may be established either by positive evidence of a new contract, oral or in writing, or may be presumed from the acts and conduct of the parties. If it is based upon a presumption, such presumption is subject to rebuttal. The *Taegen* cases (*supra*) and other authorities cited by Mr. Justice WALTER, with the exception of the *Hill* case

(*supra*), involved matrimonial actions arising during the lifetime of the parties where the presumption resulting from continuing cohabitation was rebutted by direct positive testimony as to the nonexistence of a new contract after the removal of the impediment. The *Hill* case, distinguished above, involved no ceremonial marriage but a relationship that was meretricious from its inception. In cases where the relationship is concededly meretricious from its inception, whether or not there was an existing impediment, there must be proof of an affirmative act to change the meretricious relation to a marital one. *Collins* v. *Collins* (*supra*) involved an application for alimony *pendente lite* in a divorce action. The *Smith, Pettit, Earle* and *McCullen* cases (*supra*) involved actions to annul marriages. Furthermore, the marriages involved in the *Pettit, McCullen* and *Earle* cases were alleged to have taken place during the period when common-law or nonceremonial marriages, not in writing, were prohibited under the then existing statutes.

Mr. Justice WALTER based his decision on the failure of the parties to testify that there was any marriage agreement after the removal of the impediment. He stated at page 874: " Here, however, both parties are alive and able to testify; and both actually did testify; and as neither of them says that there was any agreement of marriage after the removal of the impediment, it would be logically absurd and ridiculous for a trier of the facts nevertheless to presume or infer that such agreement was made " and properly held that mere continuance of cohabitation after removal of the impediment does not make a valid marriage where there was in fact no new matrimonial agreement after the removal of the impediment.

The result reached in the *Taegen* cases (*supra*) was further justified by the fact that the second ceremonial marriage was not entered into in good faith, but, rather, was an attempt to cloak an initial and continuing meretricious relationship. The court therefore properly concluded that the parties could not legalize an immoral relationship by any agreement or ceremony at a time when one of them had a former spouse living and that, consequently, " their relations continued to be as illegal as if no ceremony had been performed " (pp. 872–873).

In this respect the *Taegen* cases (*supra*) differ from *Applegate* v. *Applegate* (118 Misc. 359) decided by Mr. Justice LAZANSKY, the distinguished former Presiding Justice of the Appellate Division of this Department, while still sitting at Special Term. The plaintiff in that action sought to annul a marriage entered into after the defendant had instituted an

action for divorce in 1903, with the active co-operation and participation of the plaintiff, but which was ineffective by reason of the failure of the attorney, who had been engaged by the plaintiff for the bringing of the divorce action, to enter either the interlocutory or final judgment of divorce. Both plaintiff and defendant believed in good faith that they were free to marry three months after the taking of the testimony in the divorce action and it did not appear that either inquired or knew anything about an interlocutory or final judgment. The parties were ceremonially married four months following the taking of the testimony and lived together as husband and wife, and were generally recognized as such until April, 1921, when because of differences between them the plaintiff left the defendant. The defendant's first husband died in August, 1907, to the knowledge of plaintiff and defendant and it was not until after April, 1921, that the plaintiff learned for the first time that no final judgment of divorce had been entered. The plaintiff sought to annul the marriage on the ground that the defendant was married to another and undivorced at the time of her marriage to him.

Mr. Justice LAZANSKY, in a carefully considered opinion, properly held that there should be no difference in the rule of law as to the establishment of a marriage, ceremonial or nonceremonial, whether the issue is presented in a matrimonial action or in one involving property rights, and further held that the defendant had established her status as the common-law wife of the plaintiff, and dismissed the complaint. Mr. Justice LAZANSKY approved the rule enunciated in the *Wells* case (123 App. Div. 79, *supra*), later followed in *Matter of Crandall* (214 App. Div. 363), *Matter of Haffner* (254 N. Y. 238, *supra*), and other similar cases.

Counsel for petitioner has referred to and quoted from the prior opinion of this court where it said in reference to invalid or void marriages, as distinguished from voidable marriages, that (N. Y. L. J., June 3, 1943, p. 2172, col. 2): "Concededly, in such cases the second relationship is clearly meretricious and even birth of issue cannot lend sanctity to the alleged marriage (*Matter of Bruington's Estate*, 160 Misc., 34; *Matter of Burdock's Estate*, 173 id., 839, aff'd. 262 App. Div. 1000; *McCullen* v. *McCullen*, 162 App. Div., 599; *Earle* v. *Earle*, 141 id., 611)." In using the word "meretricious," the court had no intention to convey the thought that every attempted marriage by a person at a time when his or her spouse was living was "immoral or unlawful" as distinguished from "illegal and void." There

was no need for the court in its prior decision in the light of its then holding that the second marriage was voidable, and not void, to consider the questions generally appertaining to '' void '' marriages and the rules applicable to situations where the impediment to a subsequent valid marriage was removed.

In its prior opinion (N. Y. L. J., June 3, 1943, p. 2171, col. 6, *supra*), the court referred to the proof submitted by the interested parties as to the marital status of decedent and respondent's ward after the death of John McNell in 1920 and up to the date of decedent's death, and the fact that it was satisfied from all of the credible evidence that their relationship during all the years since their ceremonial marriage in 1917, and since John McNell's death in 1920, was that of husband and wife.

The court reaffirms that opinion because the record clearly establishes an uninterrupted marital cohabitation between the parties in the only home that the parties had. The respondent's ward, upon his separation from the military service in the first World War, returned to the decedent and resumed marital relations with her. Such relations were open and unconcealed. There was no attempt to carry on a camouflaged, covert, clandestine or concealed relationship, and it was continuous, consecutive and exclusive. When the mental faculties of the respondent's ward became weakened, decedent continued to care for him right down to the time when she herself was required to be removed to the Brooklyn State Hospital. In the investigation conducted by the Veterans Administration and other public authorities, the decedent acknowledged herself to be the wife of the respondent's ward and submitted proof of their ceremonial marriage in 1917. True, these statements were made after the amendment of the Domestic Relations Law in 1933 eliminating nonceremonial marriages not evidenced by writing, but they support the finding that the relationship of the decedent and respondent's ward, after the removal of the impediment to their valid marriage by the death of McNell in 1920, was matrimonial in nature.

There is conflicting testimony as to the reputation in the neighborhood as to the marital status of decedent and respondent's ward, but the weight of the testimony preponderates in support of a valid marital relation.

This relationship continued until decedent became incompetent. Then her sister had him committed. He stated, both on his admission to Brooklyn State and Kings Park State Hospitals, that he was married and lived at 84 Dean Street, the residence of decedent.

Decedent herself in 1936 petitioned the Supreme Court in a proceeding instituted by the Veterans Administration for appointment as committee of the respondent's ward, alleging that she was his wife. As committee for respondent's ward, she applied for a pension in which she set forth her ceremonial marriage to decedent in 1917, her previous marriage to McNell, and his death.

In her sworn testimony before the referee appointed to examine her accounts as committee, decedent testified that she married respondent's ward before the war, that he always lived at home with her and worked as a machinist before his illness. This occupation is verified by respondent's ward's application for insurance, in which he stated he was married. Reference is made to this fact because of petitioner's contention that he never worked.

There is testimony as to a bank account opened by decedent, in the name of Anna Muller, wife of Charles Muller, which continued until her death. None of this testimony is offset by testimony indicating her use of the McNell name from time to time in business transactions and taking title to real property, pleadings in partition action, tax records and bills.

In view of the court's present holding that the 1917 ceremonial marriage was in violation of former subdivision 3 of section 6 of the Domestic Relations Law, and void although not intended by the parties to be " ' meretricious in the sense that it was known to the parties to be immoral and unlawful, even if, as a matter of law, it was illegal and void.' " (*Matter of Haffner,* 254 N. Y. 238, 242, *supra,* citing *Matter of Crandall,* 214 App. Div. 363, *supra, Matter of Wells,* 123 App. Div. 79, *supra,* and other cases), the court holds on all the evidence that after the bar to a valid marriage of decedent and respondent's ward was removed by the death of John McNell, they became in fact and in law husband and wife; and that the respondent's ward is the lawful spouse of decedent, and as such he is entitled to share in the distribution of her estate.

Proceed accordingly.